# United States Court of Appeals
## For the First Circuit

No. 00-1931

GEORGE HAVERCOMBE,

Plaintiff, Appellant,

v.

DEPARTMENT OF EDUCATION OF
THE COMMONWEALTH OF PUERTO RICO;
VICTOR FAJARDO, SECRETARY,
in his Individual and Official Capacity,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Chief Judge,

Coffin and Campbell, Senior Circuit Judges.

Nicholas Nogueras-Cartagena on brief for appellant.
Luis A. Núñez-Salgado, Jóse Fco. Benítez-Mier and O'Neill
& Borges on brief for appellees.

May 11, 2001

**CAMPBELL, Senior Circuit Judge.** Plaintiff-Appellant George Havercombe appeals from the district court's dismissal, based upon res judicata, of his employment discrimination action against the Department of Education for the Commonwealth of Puerto Rico and Victor Fajardo, Education Secretary, in both his official and individual capacities. For the reasons explained below, we affirm.

Havercombe first sued these defendants on December 12, 1994, in the United States District Court for the District of Puerto Rico alleging employment discrimination in violation of the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act, and 42 U.S.C. § 1981.[1] In that action (hereinafter Havercombe I), Havercombe alleged that from 1978 to 1997 he had been employed as a teacher and guidance counselor for the Puerto Rico Department of Education. Beginning in early 1990, according to Havercombe, defendants engaged in a course of discriminatory conduct, to wit, work place harassment and

---

[1] The procedural history of this litigation makes case-counting somewhat complicated. In 1995, Havercombe filed yet another lawsuit against the same defendants alleging only age discrimination under the ADEA. That case was consolidated with his 1994 case on October 4, 1995. On March 21, 1997, Havercombe moved to amend his complaint, dropping the § 1981 claim. It was on that amended complaint that Havercombe went to trial and won a jury verdict in his favor.

failure to promote him because of his race, national origin and age.[2]  On February 26, 1999, a jury found in Havercombe's favor, awarding him $1,000,000 in damages.  That award was reduced by the district court to $237,000 in April 1999.

On May 3, 1999, less than a month after the district court entered final judgment in Havercombe I, Havercombe filed the current action in the same district court against the same defendants, once more alleging employment discrimination in violation of the ADEA and Title VII, but also alleging that the discrimination was in violation of 42 U.S.C. § 1981.[3]  The descriptive allegations in the complaint filed in the second action (hereinafter Havercombe II) were materially the same as those in Havercombe I.

On May 31, 2000, the district court granted defendants' motion to dismiss for failure to state a claim based on principles of res judicata.  We review the district court's action de novo.  See Apparel Art Intern., Inc. v. Amertex Enterprises Ltd., 48 F.3d 576, 582 (1st Cir. 1995).

---

[2] George Havercombe describes himself as black, as being in his mid-sixties, and as having been born in Antigua.

[3] As noted above, see supra note 1, Havercombe's initial complaint alleged a violation of 42 U.S.C. § 1981, but that count was abandoned before trial.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Under the federal-law standard,[4] this requires "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1166 (1st Cir. 1991). The parties do not dispute that prongs (1) and (3) are met here. Their disagreement revolves around prong (2).

Defendant contends that the allegations of employment discrimination contained in the Havercombe II complaint are essentially identical to those that were litigated, or that could have been litigated, to a final judgment in Havercombe I. Both cases state causes of action against the same defendants under Title VII and the ADEA for race, national origin and age discrimination, and both complaints state that the alleged discrimination began in early 1990 and continued until the date

---

[4] Because the judgment in the first action was rendered by a federal court, the preclusive effect of that judgment in the instant action is governed by federal res judicata principles. See Johnson v. SCA Disposal Servs., Inc., 931 F.2d 970, 974 (1st Cir. 1991).

of the complaint, viz, March 21, 1997 (Havercombe I) and May 3, 1999 (Havercombe II).  To be sure, Havercombe II alleged that this same conduct went on for two more years than in Havercombe I.  And Havercombe's July 31, 1998 EEOC administrative complaint charging discrimination occurring in the period 1997-1998 forms part of Havercombe II but not Havercombe I.  But nothing in particular -- no special incident different from what had already occurred in the past -- is identified as having taken place after 1997.

Defendant argues that neither the addition of the § 1981 claim nor the inclusion of the later EEOC administrative complaint (for conduct in 1997-1998) suffices to show that Havercombe II contains a cause of action that is distinct from the cause pleaded in Havercombe I.  We agree.

We start with the unsurprising proposition that, insofar as Havercombe II's complaint alleges incidents of discrimination dating from 1990 to 1997 (the very same dates covered by the amended complaint in Havercombe I), Havercombe II is plainly precluded by the first lawsuit.  Cloaking these same allegations in a new legal theory by adding a cause of action under 42 U.S.C. § 1981 cannot rescue Havercombe II from the judgment in Havercombe I for the period 1990 to 1997.  As this court has said,

> [a] single cause of action can manifest
> itself in an outpouring of different claims,
> based variously on federal statutes, state
> statutes, and the common law. ... [A]s long
> as the new complaint grows out of the same
> transaction or series of connected
> transactions as the old complaint, the
> causes of action are considered to be
> identical for res judicata purposes.

Kale, 924 F.2d at 1166 (quotation marks and citations omitted). Section 1981, which forbids discrimination in the making and enforcement of contracts, see 42 U.S.C. § 1981, is another way of presenting the same race discrimination plaintiff suffered (and for which the jury in Havercombe I found defendants liable) in the context of a different legal theory. Having brought and prevailed upon his Title VII claim in Havercombe I, in which he alleged racial discrimination of the type that would be covered by § 1981, such as failure to promote, plaintiff cannot now go forward with another lawsuit based on the same underlying facts but premised on a different, and in this case narrower, federal anti-discrimination statute. See Patterson v. McLean Credit Union, 491 U.S. 164, 179-80 (1989) (distinguishing section 1981 from Title VII and calling the latter the one with "the more expansive reach . . . mak[ing] it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," whereas section 1981 "covers only conduct at the initial

formation of the [employment] contract and conduct which impairs the right to enforce [employment] contract obligations through legal process"). Plaintiff's § 1981 claim, in so far as it is based on incidents of race discrimination between 1990 and 1997, could have been brought in Havercombe I but was not. As such, it is res judicata by virtue of the final judgment in Havercombe I. As the district court correctly held, "[t]he addition of the Section 1981 claim does not breath life into this action."

The harder question is whether the alleged subsequent discrimination that continued from 1997 until 1999 (partially covered by a later EEOC administrative complaint filed in 1998) can properly be considered to be part of the same transaction or series of connected transactions adjudicated to a final judgment in Havercombe I. The verdict in Havercombe I was returned on February 26, 1999, and a final judgment was entered in April 1999 after defendant's motion for remittitur was granted. The trial in Havercombe I, however, encompassed only alleged discriminatory conduct during the period 1990-1997.

To decide this question we look first at this circuit's approach to res judicata, which follows the Restatement (Second) of Judgments. See Manego v. Orleans Board of Trade, 773 F.2d 1, 5 (1st Cir. 1985) cert. denied, 475 U.S. 1084, (1986) (adopting the "transactional" definition of res judicata of the

-7-

Restatement (Second) of Judgments § 24).  Section 24 of the

Restatement (Second) of Judgment provides:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are <u>to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage</u>.

Restatement (Second) of Judgments § 24 (emphasis added).  The

Restatement explains this pragmatic approach as an outgrowth of

the federal rules' "considerable freedom of amendment and [the

system's] . . . willing[ness] to tolerate changes of direction

in the course of litigation."  <u>Id.</u>, cmt. a.  Applying the

Restatement considerations to this case's factual and procedural

posture, we conclude that <u>Havercombe I</u> extinguished not only the

claims for the period 1990-1997 alleged in <u>Havercombe II</u> but

those continuing through 1999 as well.

In so deciding, we look first to the amended complaint

in <u>Havercombe II</u> on which the plaintiff relies in order to

distinguish this second action from the first. The <u>Havercombe II</u> complaint alleges that "Defendant have [sic] subjected plaintiff to a discriminatory and offensive environment in the workplace, which has entailed, inter alia, offensive racial slurs, denial of lunch privileges, assignment to unhealthy and hazardous working areas and unfair adverse recommendations." The complaint further alleges that "[t]he racial discrimination practices by defendant Victor Fajardo in refusing to . . . promote plaintiff and in issuing adverse assignment decisions has [sic] deprived plaintiff of the equal benefit of the law . . . . " and that "Defendants have engaged in discriminatory practices against plaintiff regarding the terms and conditions of his employment on the basis of age, including but not limited to engaging in a pattern and practice of harassment and humiliation. . . ."

The wording of the allegations contained in the <u>Havercombe II</u> complaint is materially identical to that in the <u>Havercombe I</u> amended complaint (except for the mention of an additional cause of action under 42 U.S.C. § 1981, <u>supra</u>).[5] The

_____

[5] As an example, paragraph 22 of the amended complaint filed in <u>Havercombe I</u>, alleges that "Defendants have subjected plaintiff to a discriminatory and offensive environment in the workplace, which has entailed, inter alia, offensive racial slurs, denial of lunch privileges, assignment to unhealthy and hazardous working areas and unfair adverse recommendations...." Exactly the same language appears in paragraph 12 of the

dates alleged in <u>Havercombe II</u> as the beginning of the defendants' discriminatory acts are 1990 and 1991, as they were in <u>Havercombe I</u>.  We note also that Havercombe initially cited in <u>Havercombe II</u> his first EEOC right-to-sue letter (September 16, 1994) on which he based <u>Havercombe I</u>.  By amendment, however, he replaced this reference with a later EEOC letter covering allegations of discrimination in 1997-1998 after defendants pointed to a statute of limitations problem should the second action be based on the earlier date.[6]

Plaintiff does not specifically allege in his amended <u>Havercombe II</u> complaint that any new facts occurred after 1997 indicative of additional causes of action under Title VII and the ADEA distinct from those pleaded and adjudicated in <u>Havercombe I</u>.  On the contrary, the language in the <u>Havercombe II</u> complaint is general and broad, covering the period commencing in 1990-91, and indicating that all acts within that entire period, including those after 1997, were part of the same pattern of discrimination – a pattern previously alleged in

complaint in <u>Havercombe II</u>.

[6] On January 14, 2000, eight months after initially filing suit in <u>Havercombe II</u>, plaintiff moved to amend his complaint to replace the date of September 16, 1994 with the date of February 8, 1999, the date on which he received the second EEOC right-to-sue letter on which he bases <u>Havercombe II</u>.

Havercombe I.  No new and distinctive incidents of discrimination were alleged in Havercombe II.

Although Havercombe's 1998 EEOC administrative complaint, filed with the district court in support of his complaint in Havercombe II, charges discriminatory conduct during 1997-98 – after the period covered by the Havercombe I amended complaint – these charges simply repeat similar broadly-worded charges made in Havercombe's earlier EEOC complaints and in Havercombe I itself.[7]  No identifying dates or otherwise specific incidents are set out.  In the 1998 EEOC complaint, Havercombe reasserts earlier allegations that he was denied leave time granted to other employees and was placed in inadequate and unsanitary work spaces.  These broadly-described charges do not identify transactions that are sufficiently separate from the earlier ones to constitute a new cause of action arising in the 1997-1999 period even if the allegations are generously read to cover occurrences extending into that period.

_____

[7] Even though the allegations contained in the July 31, 1998 EEOC administrative complaint were not specifically imported into the Havercombe II complaint, we will include them in our analysis, assuming, without deciding, that they are matters that may fairly be incorporated into the complaint.  See Beddal v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998).

Key in both cases was the employment relationship between Havercombe and the defendants and the propriety of the defendants' motivation for adverse employment decisions that Havercombe alleges he endured. Spread out over a long period of time, from 1990 to 1999, all of these acts were allegedly committed because of racial and age-related animus. It is, in fact, Havercombe's contention that all of these events were directly related to each other in terms of motivation and common purpose, one factor the Restatement instructs us to consider when defining "transaction" or "series of connected transactions." See Restatement (Second) of Judgments § 24(2). See also King v. Union Oil Co. of California, 117 F.3d 443, 446-47 (10th Cir. 1997) (holding that employer's decision to terminate employee and its later decision to refuse to pay severance benefits are part of a series of connected transactions because they were both alleged to be based on improper racial and age-related animus, thus giving rise to only one cause of action, even though the factual events giving rise to each are separate and the first action provided the basis for the latter).

A further pervasive allegation in both Havercombe I and Havercombe II is that of a hostile work environment. Such a claim does not ordinarily turn on single acts but on an

aggregation of hostile acts extending over a period of time. See O'Rourke v. City of Providence, 235 F.3d 713, 732 (1st Cir. 2001) (stating that "a plaintiff usually will not have a viable claim of hostile work environment from single acts that are isolated or sporadic or not themselves severe enough to alter the work environment and create an abusive work environment"). Incidents occurring in 1997-1999 would have been additional evidence in Havercombe I of the unlawful workplace environment; they would have easily fit the "litigative unit" of the first trial. Restatement (Second) of Judgments § 24, cmt. a. Havercombe's allegations in his July 31, 1998 EEOC complaint -- allegations such as the continual humiliation he suffered "on a day by [day] basis in all forms," and his sub-standard work conditions -- would have all been examples of, and could have been used to prove, the pattern of discrimination Havercombe alleged he suffered and that the jury apparently found to be true in Havercombe I. The additional incidents during that period could also have been the subject of the testimony and other factual proffers in Havercombe I as, among other things, proof of the defendant's on-going practice of unlawful discrimination. Such an overlap in evidentiary proffers is, according to the Restatement, another good reason for the "second action . . . [to] be held precluded." Id., cmt. b.

We recognize that violations of the type here alleged are sometimes considered to be "serial" (nomenclature rather similar to the Restatement's "series of . . . transactions" language). Serial violations may be "composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII," Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990) (emphasis added). But the Havercombe II pleadings are insufficient to indicate that a separate actionable wrong occurred during the 1997-1999 period.

As we have noted, Havercombe's pleadings do little to identify discrete, separable wrongs. Rather, they suggest a claim of a pattern and practice of improper acts adding up to a single claim of workplace harassment. See O'Rourke, 235 F.3d at 732. The serial violations doctrine was developed as an equitable exception to otherwise strict statute of limitations requirements for civil rights claims. Often times (and for the reasons explained in O'Rourke, see id.), a plaintiff does not know that, for several years on a continuous basis, she has been the victim of unlawful discrimination until after she missed the filing deadline. The concerns that animate the serial violations doctrine do not apply in the present situation pertaining to res judicata. Havercombe does not contend that he is the victim of

discrete acts of discrimination, each actionable under Title VII or the ADEA.  On the contrary, he alleges both in Havercombe I and Havercombe II that he has been harassed and subject to on-going humiliation on the basis of his race and age while at work.[8]  He also does not contend that during and immediately before the Havercombe I trial in 1999 he lacked knowledge of any incidents that occurred in 1997 and 1998.  Rather, six months before the jury began deliberating in Havercombe I, he filed a claim with the EEOC alleging discrimination based on, among other things, such additional incidents.

Had Havercombe amended his complaint in late 1998 to include these incidents, they might have increased his eventual damages award.  In fact, while stating that these incidents are more of the same of the on-going harassment he suffered, which did not stop with the filing of his first lawsuit, Havercombe acknowledges that his "objective [in bringing Havercombe II] is to receive adequate economic compensation for damages."  By this, Havercombe suggests that instead of bringing a new cause

---

[8]     Although in both cases Havercombe mentions the defendants' alleged failure to promote him, in Havercombe II, plaintiff fails to specify a date or time of that alleged harm, and therefore we have no basis on which to reasonably determine whether this is a fresh act of discrimination, not alleged and proved in Havercombe I, or a repetition of prior claims already adjudicated.  Here, where Havercombe gives no details of this asserted slight, we have no basis for viewing it as other than previously adjudicated.

of action, he is asking to be further reimbursed over and above the jury award he already received for suffering constant and on-going harassment.  Had he wished to augment his damages award, he should have (and could have) provided more evidence of harassment during the trial of Havercombe I in 1999, including the harassment he now alleges was on-going throughout that earlier proceeding.

Havercombe contends that his allegations of discrimination between 1997 and 1999 could not have been brought, by amendment or otherwise, in Havercombe I because not until February 8, 1999 -- shortly before the trial began and only three weeks before the jury verdict in Havercombe I -- did he receive from the EEOC a right-to-sue letter based on the later conduct.  Assuming that Havercombe needed a new EEOC letter in these circumstances -- a matter we need not decide -- the lack of a right-to-sue letter would not have prevented plaintiff from notifying the court of his allegations of defendants' continuing violations of federal anti-discrimination laws (against which the defendants were at that time engaged in defending) and, if need be, asking for a stay until the EEOC issued him the letter.  See Hermann v. Cencom Cable Assoc. Inc., 999 F.2d 223, 225 (7th Cir. 1993).  At the same time, the plaintiff could have requested of the EEOC an acceleration of

-16-

the administrative process.  <u>See id.</u>  And when, several weeks before trial, plaintiff did receive the right-to-sue letter, plaintiff could have moved to amend his original complaint to include those allegations in order to put them before the jury and argue for higher damages.  <u>See</u> <u>Boateng</u> v. <u>Interamerican University, Inc.</u>, 219 F.3d 56, 62 (1st Cir. 2000); <u>Hermann</u>, 999 F.2d at 225.  Given the similarity of the alleged discrimination during 1997-1999 with that allegedly occurring in the early 1990s (at least as the conduct is described in the two complaints), and given that the general rule in the federal courts is to liberally permit amendments where justice so requires, his failure to so amend has foreclosed him from bringing them at all.  <u>See</u> <u>Boateng</u>, 219 F.3d at 62 (agreeing with other circuits that have held that Title VII claims are precluded by a prior adjudication even though a right-to-sue letter had not been obtained until after final judgment had entered in first action and concluding that "there is no principled basis for reaching a different result where, as here, the plaintiff obtained permission to sue from the EEOC while his first suit was still pending").  Thus, we find the plaintiff's

objections relating to timing of the February 8, 1999 EEOC right-to-sue letter are unavailing.[9]

This would be a different case had the complaint in Havercombe II been pleaded so as to set out fresh causes of action in the post-1997 period. However, we think it was plaintiff's burden to make allegations from which the existence of a new cause of action could be gleaned. The choice of language and structure of his second complaint was his to make. See, e.g., Burnett v. Grattan, 468 U.S. 42, 50-51 n.13 (1984) (stating that an injured person "must look ahead to the responsibilities that immediately follow filing of a complaint . . . [and] be prepared to withstand various responses, such as a motion to dismiss," and noting that "[a]lthough the pleading and amendment of pleadings rules in federal court are to be liberally construed, the administration

---

[9] For the same reasons, this case does not fall into the "exceptions to the general rule concerning claim-splitting" as provided by the Restatement (Second) of Judgments § 26. See, e.g., Restatement (Second) of Judgments § 26, cmt. c ("where formal barriers existed against full presentation of claim in first action" such as where subject matter jurisdiction is limited in the court of the first action); id., cmt. j (where the defendant has committed fraud on the plaintiff by concealing evidence "of a part or phase of claim that the plaintiff failed to include in an earlier action."). See also Marrapese v. State of Rhode Island, 749 F.3d 934, 940 (1st Cir. 1985)(stating that if the information on which the second action is based was not reasonably discoverable during the pendency of the first action, res judicata will not apply).

of justice is not well served by the filing of premature, hastily drawn complaints").

The rule is well-established, of course, that we must take as true all well-pleaded facts and draw all reasonable inferences favorable to the complainant. See Papasan v. Allain, 478 U.S. 265, 283 (1986); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). But even under this forgiving standard, Havercombe's complaint does not survive scrutiny. Alerted to the possibility that Havercombe was trying to relitigate claims already adjudicated in his favor by the similarities between the complaint in Havercombe II and the complaint in Havercombe I, see supra note 5 and accompanying text, we looked further to the summary of the evidence presented during the Havercombe I trial (as provided by the district court's Memorandum and Opinion denying defendant's motion for judgment as a matter of law). When comparing this summary to the universe of reasonable inferences that can be drawn from the factual allegations contained in the Havercombe II complaint, we cannot conclude that Havercombe II covers any new ground. There are no factual allegations that can be reasonably drawn from the complaint in Havercombe II from which the district court could conclude that the claims therein give rise to a different "transaction" or "series of transactions" than those litigated

to a jury verdict in Havercombe I. See, e.g., Isaac v. Schwartz, 706 F.2d 15, 17-18 (1st Cir. 1983) (affirming a judgment of dismissal on the basis of res judicata after determining that the "new complaint grows out of the same 'transaction or series of connected transactions' as the old complaint").

As a last-ditch effort, plaintiff claims that the equitable exception to the res judicata doctrine should apply here, i.e., that equity demands the suspension of the doctrine in this case. The Supreme Court has, however, counseled us to adhere to traditional principles of res judicata and not to make any "ad hoc determination of the equities in a particular case." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981). See also Johnson v. SCA Disposal Servs., Inc., 931 F.2d 970, 977 (1st Cir. 1991) (citing Moitie for the proposition that "we cannot relax the principles of claim preclusion even if we find that the equities cry out for us to do so"). In this case, Havercombe has already won a jury verdict in his favor, albeit receiving a remitted award. Had he been suffering on-going discrimination of the type he was in the process of actively litigating during the pendency of the first trial, he has only himself to blame for not bringing it to the court's attention and amending his complaint accordingly. The trial commenced on

February 9, 1999, a time by which all of the discrimination alleged in <u>Havercombe II</u> had occurred.

Because we affirm the district court's dismissal of plaintiff's complaint on the basis of res judicata, we do not reach the other bases for dismissal raised by defendants in their appeal.

**Affirmed.**

**So ordered. Costs to appellants.**