Chambers v . Warden                    CV-02-331-JD  08/05/02  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


<u>Randolph L. Chambers</u>

    v.                                        Civil No. 02-331-JD
                                          Opinion No. 2002 DNH 150
<u>Warden, New Hampshire State et al.</u>


## REPORT AND RECOMMENDATION

The above-captioned matter was referred to the undersigned for a report and recommendation on the Plaintiff's motion for a temporary restraining order and preliminary injunction (document no. 4).  The Plaintiff, Randolph L. Chambers, seeks an order requiring the New Hampshire State Prison for Men ("NHSP") to move him to a handicap accessible cell.

The Court held an evidentiary hearing on Chambers' motion on July 29, 2002.  Chambers, proceeding <u>pro se</u>, testified on his own behalf.  Walter Davies, Unit Manager of the NHSP Close Custody Unit, testified on behalf of Defendants.  In addition, Defendants produced affidavits from Bernadette Campbell, a licensed physical therapist at NHSP, and Joyce Veon, custodian of the health records at NHSP, and correspondence pertaining to Chambers' requests for accommodations.  After considering the testimony and other evidence presented at the hearing, and the relevant

authorities, I recommend that Chambers' motion be denied.

STANDARD OF REVIEW

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc., 48 F.3d 618, 620 (1st Cir. 1995) (citing Chalk v. United States Dist. Court Cent. Dist. of Cal., 840 F.2d 701, 704 (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980)). Thus, if the court ultimately finds for the movant, a preliminary injunction provides the court with a method for preventing or minimizing any current or future wrongs caused by the defendant. CMM Cable Rep., 48 F.3d at 620; 13 James Moore et al., Moore's Federal Practice § 65.02 (3d ed. 1998).

A district court may grant a plaintiff's request for a preliminary injunction if the plaintiff can satisfy a four-part test: (1) the plaintiff will suffer irreparable harm if the injunction is not granted; (2) a likelihood of success on the merits; (3) that such injury outweighs any harm which granting the injunction would inflict on the defendant; and (4) that the

2

public interest will not be adversely affected by the granting of the injunction.  See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).  In the First Circuit, the key issue in determining whether injunctive relief should be granted is whether the plaintiff can demonstrate a likelihood of success on the merits.  Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will usually not obtain interim injunctive relief).  A party moving for injunctive relief must satisfy each of the preliminary injunction factors.  Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency & Office of Emergency Preparedness of Com. of Mass., 649 F.2d 71, 74 (1st Cir. 1981) (denial of a request for a preliminary injunction appropriate if the trial court concludes that the movant fails to demonstrate one of the required factors).  With this standard of review in mind, the relevant facts are recited below.

BACKGROUND

Chambers, an inmate at NHSP since September 2001, has a number of physical impairments.  The portion of his left arm below his elbow was amputated when he was a child.  He also

3

suffers from lower back pain, ankle pain and wrist pain.

Chambers has been housed in a standard cell throughout his incarceration at NHSP.  On July 1, 2002, Chambers began requesting that he be moved to a handicapped accessible cell.  At that time he was assigned to the Close Custody Unit.[1]  Chambers has the following complaints about his cell and housing situation: there are no handrails in the shower or toilet areas; the faucets in the sink are difficult for him to use; and the drain cover is missing in the shower exposing a hole in the floor.  Chambers contends that these conditions present serious medical issues.

On July 8, 2002, Dr. Freedman, a physician at NHSP, responded affirmatively to Chambers' written request for a medical restriction pass.  Dr. Freedman noted on the pass that Chambers should be given a bottom bunk bed and a handicap accessible cell.  Chambers notified Davies that he had received a medical restriction pass for a handicap cell and requested that he be moved immediately.

Shortly thereafter, on July 12, 2002, Chambers filed this

---

[1]The Close Custody Unit is a level between medium and maximum security.  Chambers was moved from medium security to the Close Custody Unit in February 2002 because he failed a drug test.

4

action under 42 U.S.C. § 1983 alleging violations of the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Eighth Amendment to the U.S. Constitution because NHSP had not provided his requested accommodation. Chambers named as defendants in this action Jane Coplan, NHSP Warden, Davies, and two NHSP officers, Sgt. Roy, and Cpl. McLeod. Chambers filed the instant motion for a temporary restraining order and a preliminary injunction with his Complaint.

On July 15, 2002, Davies wrote a memorandum to Dr. Freedman stating that he needed clarification of Freedman's intentions regarding the medical pass issued to Chambers. See Def. Ex. C. Davies asked Dr. Freedman to specify what type of accommodation Chambers required for his disability. Id. Dr. Freedman obtained the opinion of Bernadette Campbell, a licensed physical therapist at NHSP, before responding to Davies. Campbell was familiar with Chambers having treated him six times and evaluated him several times.

On July 16, 2002, Campbell examined Chambers. She concluded after her evaluation that Chambers did not require any special accommodations. In an affidavit submitted with the Defendants' opposition to Chambers' motion for injunctive relief, she stated:

5

> It is my opinion that Mr. Chambers *does not* need any special accommodations such as handrails for his physical disabilities.  Mr. Chambers presents with trunk range of motion within normal limits, lower extremity strength within normal limits and good general muscle tone throughout.  Furthermore, while Mr. Chambers does have some difficulties with his right ankle, it does not effect [sic] his ability to ambulate, [and] does not interfere with prolonged standing.  It does not appear that Mr. Chambers should have any difficulty getting to the shower or using it independently.

Campbell Aff. at ¶ 7 (Def. Ex. A).  On July 17, 2002, Dr. Freedman rescinded Chambers' medical restriction pass based on Campbell's evaluation.

## DISCUSSION

A.   Likelihood of Success on the Merits

1.   42 U.S.C. § 1983

"The essential elements of a claim under section 1983 are: first, that the defendants acted under color of state law; and second, that the defendants' conduct worked a denial of rights secured by the Constitution or by federal law."  Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  "The second element requires the plaintiff to prove not only a deprivation of federal right, but also that the defendant's conduct was a cause in fact of the alleged deprivation."  Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997).

6

There is no dispute that the defendants were acting under color of state law in their capacities as prison officials. Chambers must show that the Defendants' conduct caused him to suffer a deprivation of rights protected by the Constitution or federal law.

2.  Eighth Amendment

It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). By alleging that the Defendants have been deliberately indifferent to a serious medical need, Chambers attempts to state a claim under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling, 509 U.S. at 32; Estelle v. Gamble, 429 U.S. 97, 104 (1976). Chambers is not likely to succeed on his Eighth Amendment claim, however, because he has not demonstrated that the defendants have in fact been deliberately indifferent to a serious medical need.

a.  Serious Medical Need

An inmate can demonstrate a serious medical need in either of two ways. By showing that the need has been diagnosed by a

7

physician and deemed to require treatment or that the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995); Gaudreault v. Municipality of Salem, Mass, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). Chambers produced no evidence that would satisfy either test.

Chambers' testimony at the evidentiary hearing focused on the conditions of his current cell. The shower in Chambers' cell is designed for use by one person and is approximately three or four square feet in area. There are no handrails. The drain cover is missing from the shower floor leaving an exposed hole that, according to Chambers, presents a dangerous condition.

With respect to the toilet area, there are no handrails near the toilet, and Chambers testified that he has difficultly using the faucet in the sink for shaving, which NHSP requires him to do daily. The sink in Chambers' cell does not have turn faucets and will only release water if the buttons are pushed. Therefore, Chambers needs to continually bend over to use his stump to turn the water on, which places strain on his back.

The Defendants respond that Chambers should not have any difficulty using standard shower facilities. Davies testified that it would be easy to reach any of the walls in the shower because it is a confined area. He also testified that the hole in the shower floor is only about two inches in diameter.[2] Under the circumstances, the addition of handrails and a shower drain cover would make the shower more safe, but I find that the evidence falls short of demonstrating a serious medical issue.

Given that Chambers has only one hand, and that he experiences lower back pain, his assertion that he has difficulty using the faucet in his cell is certainly reasonable. But I also find that this difficulty does not amount to a serious medical need. The Defendants produced evidence that Chambers does not need an accommodation because his trunk range of motion and lower extremity strength are within normal limits. Campbell Aff. at ¶ 7 (Def. Ex. A). Additionally, the defendants pointed out that Chambers has been permitted to use an electric shaver in the past, an assertion that Chambers does not dispute. I find that Chambers has not presented evidence that demonstrates that he has a serious medical need for the accommodations he seeks.

---

[2]Davies testified that NHSP has ordered a replacement drain cover.

b.    Deliberate Indifference

Even if Chambers were able to demonstrate that he has a serious medical need for a handicap accessible cell, his Eighth Amendment claim is still unlikely to succeed on the merits because he has not demonstrated that the Defendants have been deliberately indifferent to his concerns.  Defendants presented evidence that Dr. Freedman and Davies responded to Chambers' complaints.  After Chambers was issued a medical restriction pass, Davies contacted Dr. Freedman to find out what exactly NHSP needed to do to adequately meet Chambers' medical need.  Davies informed Dr. Freedman that Chambers had been assigned to a bottom bunk bed, and asked whether Chambers should be issued a shower chair.  See Davies Mem. dated July 15, 2002 (Def. Ex. C).  Davies also informed Dr. Freedman that Davies believed that Chambers is trying to use his handicap to get transferred out of the Close Custody Unit.  After receiving Davies' memorandum, Dr. Freedman spoke with Campbell to obtain her assessment of Chambers' physical condition.  Dr. Freedman then rescinded Chambers' medical pass based on Campbell's assessment.

I find that the evidence does not demonstrate that the defendants were deliberately indifferent to a serious medical

10

need. Rather, the evidence tends to show that NHSP reasonably attended to Chambers' current physical condition and determined that he does not require accommodation. Based on Chambers' failure to demonstrate that he has a serious medical need or that NHSP has been deliberately indifferent to his needs, I find that Chambers is unlikely to succeed on the merits of his Eighth Amendment claim.

2.    Americans With Disabilities Act

The Americans with Disabilities Act ("ADA"), as it applies to public entities, is codified at 42 U.S.C. §§ 12131 et seq. Section 12132 provides in relevant part that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The Supreme Court has established that the ADA applies to inmates in state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 209-210 (1998). In order to state a claim under Title II of the ADA, Chambers must establish the following elements: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs,

11

or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. 42 U.S.C. § 12132; Race v. Toledo-Davila, 291 F.3d 857, 858 (1st Cir. 2002); Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000).

The operative facts for Chambers' ADA claim are the same as for his Eighth Amendment claim. Chambers alleges that he qualifies as a disabled person under the ADA because he only has one hand. He contends that he needs to be moved to a handicap accessible cell so that he can safely use the shower and toilet facilities. He argues that the accommodation he seeks is reasonable because NHSP has handicap accessible cells at the medium security level. I find that Chambers alleges facts sufficient to state a claim for a violation of the ADA.

Chambers is unlikely to succeed on the merits of his ADA claim, however, for the same reasons that he is unlikely to succeed on his Eighth Amendment claim. The evidence presented suggests that Chambers does not require an accommodation. Chambers had been housed in a standard cell at NHSP for nearly ten months before he ever requested a handicap accessible cell. Campbell stated in her affidavit that Chambers appeared to have

12

adapted well to life with one hand,[3] and was of the opinion that Chambers should not have difficultly using the prison facilities without any special accommodations. Campbell Aff. at ¶¶ 3, 7 (Def. Ex. A). Chambers presented no evidence at the hearing to rebut the Defendants' contentions regarding his present physical condition. Based on the evidence presented at the hearing, I find that Chambers is unlikely to succeed on the merits of his ADA claim.

### 3. Rehabilitation Act of 1973

Section 504 the Rehabilitation Act of 1973 provides in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). While the Supreme Court has not explicitly held that the Rehabilitation Act applies to prisons, other federal courts have reached that conclusion. See e.g., Stanley v. Litscher, 213 F.3d 340, 343 (7th Cir. 2000) (citing cases). To state a claim under Section 504 of the Rehabilitation Act,

---

[3]Campbell points out that Chambers was employed as a painter and a roofer until 1990. Campbell Aff. at ¶ 3 (Def. Ex. A).

Chambers must show the following elements: (1) that he is disabled; (2) that he sought services from a federally funded entity; (3) that he was "otherwise qualified" to receive those services from a federally funded entity; and (4) that he was denied those services "solely by reason of his . . . disability." Lesley v. Hee Man Chie, 250 F.3d 47, 52-53 (1st Cir. 2001).

Chambers has not stated a claim under the Rehabilitation Act because he has not alleged that NHSP is a federally-funded entity. This deficiency could be overlooked if Chambers were an inmate in a federal prison, but he is not. Even if Chambers alleged that NHSP receives federal funds, however, I would find that he is unlikely to succeed on the merits of his claim because he has not demonstrated that he has been denied a service because of his disability. Therefore, I find that Chambers' is not likely to succeed on the merits of this claim.

B.   Irreparable Harm

While Chambers' failure to show likelihood of success on the merits is sufficient to deny his request for injunctive relief, his motion should also be denied because he presented no evidence that demonstrates that he is likely to suffer imminent irreparable harm absent relief. While an inmate need not wait

14

until after a tragic event occurs to seek an injunction to remedy unsafe, life-threatening prison conditions, <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993), he must do more than merely allege possibility of harm.[4] <u>Id.</u> at 36 ("prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate"); <u>see also</u>, <u>Farmer</u>, 511 U.S. at 834 (inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm). Here Chambers has neither alleged that he suffered any injuries due to the lack of a handicap accessible cell, nor has he established any facts that show that serious injuries are imminent.

Based on Chambers' failure to show both that he is likely to succeed on the merits of his claims and that he is likely to suffer irreparable harm if his request for relief is denied,

---

[4]Chambers cites <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) for the proposition that the continuing deprivation of a constitutional right constitutes irreparable harm as a matter of law. This argument is unpersuasive for two reasons. First, Chambers has not demonstrated that his Eighth Amendment rights have been violated. Second, in <u>Elrod</u> the Supreme Court addressed the loss of First Amendment rights. Chambers cites no case where the Supreme Court applied the holding of <u>Elrod</u> to alleged deprivations of Eighth Amendment rights.

15

Chambers' motion for injunctive relief should be denied.[5]

CONCLUSION

Based on the reasons contained in the foregoing Report, I recommend that the Plaintiff's motion for a temporary restraining order and preliminary injunction (document no. 4) be denied.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:   August 5, 2002

cc:     Randolph L. Chambers, pro se
        Andrew B. Livernois, Esq.

_____

[5]Because Chambers has neither established a likelihood of success on the merits, nor irreparable harm, I do not address the public interest and comparable hardship preliminary injunction factors. See Massachusetts Coalition of Citizens With Disabilities, 649 F.2d at 74 n.4.