STATE OF MAINE                                      SUPERIOR COURT
SAGADAHOC, SS.                                      CIVIL ACTION
                                                    DOCKET NO.: BATSC-CV-2018-24


MATTHEW POLLACK                      )
and                                  )
JANE QUIRION                         )
                                     )
            Plaintiffs,              )
                                     )
                                     )
      v.                             )      **ORDER ON PENDING**
                                     )      **MOTIONS**
                                     )
JESSICA FOURNIER                     )
                                     )
            Defendant.               )


The parties' motions to exceed page limits are GRANTED.

The Plaintiffs' Motion to Strike is GRANTED, in part. The new facts alleged in the Defendant's Reply are struck and will not be considered by the court.

The Law Court has held that this court has statutory authority to grant attorney fees in this action because the Defendant's Special Motion to Dismiss was granted, in part. Pursuant to the Law Court's mandate, this matter is before the court to determine if an award of attorney fees is warranted due to the court granting the Defendant's Special Motion to Dismiss as to Count 3 and, in part, as to Count 4, and if so, to determine an appropriate award of attorney fees in proportion to them. *See Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 12, 847 A.2d 1169 (holding that a court may use the merit of a case "as a measure of whether attorney fees are appropriate . . . because the anti-SLAPP statute is aimed at preventing litigation that has no chance of succeeding on the merits").

If there has ever been a case with no chance of succeeding on the merits, it is this one. In this litigation, the Plaintiffs have pursued fundamentally the same claims against

1

the Defendant as they did unsuccessfully in previous litigation against her employer. There were three separate reasons to dismiss three of the four counts and two separate reasons to dismiss the fourth count. Vexatious litigation such as this case is unfortunately often pursued by *pro se* litigants, but it is disturbing that this approach has been pursued by two members of the Maine Bar. While this court is unable to find that the litigation has been pursued in bad faith, its filing was an exercise of bad judgment.

The court has considered the factors that the Law Court has identified as significant when determining what constitutes reasonable attorney fees and awards attorney fees to Defendant Jessica Fournier in the amount of $25,503.00.[1] The court finds that this amount constitutes a reasonable proportion of the fees incurred by the Defendant that are related to the court granting the Defendant's Special Motion to Dismiss as to Count 3 and, in part, as to Count 4.

The Clerk is directed to incorporate this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure

Dated: October 28, 2020

Daniel I. Billings
Justice, Maine Superior Court

---

[1] The court has awarded 75% of the fees identified in Defendant's Exhibit 1, Category A, with the exception of entries related to preparation of the Defendant's Bill of Costs, which the court deems unreasonable, and entries related to a Freedom of Access request, which is not directly related to this case. The court specifically declines to award any amount of the other categories of fees sought by the Defendant. However, the fact that those fees were incurred in relation to this matter was considered by the court in determining what constituted a reasonable proportion of fees to award.

2

STATE OF MAINE                          SUPERIOR COURT
SAGADAHOC, SS.                          CIVIL ACTION
                                        DOCKET NO.: BATSC-CV-2018-24


MATTHEW POLLACK          )
and                      )
JANE QUIRION             )
                         )
          Plaintiffs,    )
                         )
                         )
     v.                  )       **JUDGMENT ON SPECIAL**
                         )       **MOTION TO DISMISS**
                         )
JESSICA FOURNIER         )
                         )
          Defendant.     )


This matter is before the court on the Defendant's Special Motion to Dismiss brought pursuant to 14 M.R.S. § 556.

## BACKGROUND

Fournier brings her Special Motion to Dismiss pursuant to 14 M.R.S. § 556, the Anti-Strategic Lawsuit Against Public Participation (SLAPP) Statute, on all four counts of Plaintiffs' Amended Complaint 3.[1] Count I, abuse of process, is brought by both Pollack and Quirion. Its basis is the Notice of Claim (Notice) dated August 3, 2012, that Fournier served on the Plaintiffs pursuant to 14 M.R.S. § 1602(B)(5).[2] In the Notice, Fournier asserted claims of defamation, negligent and/or intentional infliction of emotional distress, and interference with contractual relations. The remaining counts in

---

[1] *See* Order on Defendant's Second Motion to Dismiss of even date for a more in depth description of the factual background in this case.

[2] "Prejudgment interest accrues from the time of notice of claim setting forth under oath the cause of action, served personally or by registered or certified mail upon the defendant until the date on which an order of judgment is entered."

1

Amended Complaint 3 are asserted by Quirion only. Counts II and III allege wrongful use of civil proceedings. Count II is based upon Fournier having "procured" a civil harassment proceeding by Caroline Thibeault (Thibeault).[3] Count III is based on Fournier's harassment notices and civil harassment proceeding that she initiated on her own behalf. Finally, Count IV is an alleged violation of the Maine Civil Rights Act (MCRA) based on the threat of arrest contained within the harassment notices obtained from the Topsham Police Department (TPD) by Fournier, Thibeault, and Rebecca Brooks (Brooks) that were subsequently served on Quirion.

## DISCUSSION

SLAPP litigation is generally without merit and filed to dissuade or punish the exercise of a defendant's First Amendment Rights. *Morse Bros. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842. Delay, distraction, punishment, or the defendant's financial burden in defending the suit are the plaintiff's primary goals in a SLAPP case. *Gaudette v. Davis*, 2017 ME 86, ¶ 4, 160 A.3d 1190, 160 A.3d 1190; *Morse Bros.*, 2001 ME 70, ¶ 10, 772 A.2d 842. To deter this behavior, in 1995, the Maine Legislature enacted 14 M.R.S. § 556, the anti-SLAPP statute. The statute permits the filing of a special motion to dismiss when a moving party asserts that the civil claims against her are based on her right of petition under either the state or federal Constitution. § 556. The special motion to dismiss is designed to "minimize the litigation costs associated with the defense of such meritless suits." *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226. Section 556 is employed in more than just run of the mill zoning dispute cases. "Recent precedent suggests that an anti-SLAPP motion is appropriate when the plaintiff's lawsuit or claim is a retaliatory effort

---

[3] Fournier gave a "Victim Impact Statement" to the Topsham Police Department in support of Thibeault and Brooks (mentioned below) requesting harassment notices against Quirion.

2

based solely on the moving party's petitioning conduct." *Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 13, 103 A.3d 547. "Accordingly, SLAPP lawsuits have most often taken the form of ordinary tort claims, including defamation, business torts, conspiracy, constitutional-civil rights violations, and nuisance claims." *Id.* n.6.

The statute contemplates a burden shifting framework that allows the court to expedite the process of dismissing a meritless case and mandates that the court grant the special motion unless the plaintiff meets his burden on certain issues. § 556. Over the years, caselaw has refined this burden shifting framework in an attempt to balance the plaintiff's right of access to the court to seek redress for the very same actions that the defendant declares is an exercise of her First Amendment right. *Gaudette*, 2017 ME 86, ¶ 6, 160 A.3d 1190.

## I.     The Anti-SLAPP Burden Shifting Framework.

*Gaudette* provides the trial court with a three-step burden shifting framework to determine whether a defendant's special motion to dismiss under section 556 should be granted. *Id.* ¶¶ 16-22. First, the defendant, as the moving party, has the burden to show based on pleadings and affidavits that the anti-SLAPP statute applies by demonstrating that the claims against her are based on her constitutional right to petition. *Id.* ¶ 16. This petitioning activity is a question of law for the court to decide. *Id.* If the defendant does not meet her burden to show that the plaintiff's claims are based on her petitioning activity, "the court must deny the special motion to dismiss without any need to review any opposition by the plaintiff." *Id.*

Next, if the defendant has met her burden to show that the claims are based on her petitioning activity, the court then considers the plaintiff's opposition. *Id.* ¶ 17. In his opposition, the plaintiff must present prima facie evidence, via pleadings and affidavits, "that the defendant's petitioning activity was devoid of any reasonable factual support

3

or any arguable basis in law *and* that the defendant's petitioning activity caused actual injury to the plaintiff." *Id.* (quoting *Nader v. Me. Democratic Party (Nader I)*, 2012 ME 57, ¶¶ 20-25, 41 A.3d 551 (internal quotation omitted). If the plaintiff does not meet his prima facie burden, whether due to lack of evidence "on either element or based on some other legal insufficiency, the special motion to dismiss must be granted, either partially or wholly, with no additional procedure." *Gaudette*, 2017 ME 86, ¶ 17, 160 A.3d 1190.

Finally, in departure from *Nader I*, and applicable only if the plaintiff meets his prima facie burden regarding "any or all of the defendant's petitioning activities, the special motion to dismiss is not then automatically denied." *Id.* ¶ 18. Instead, an "additional procedural component" requires the trial court, upon request of either the plaintiff or the defendant, to allow the parties "to undertake a brief period of limited discovery, the terms of which are determined by the court after a case management hearing." *Id.* Next, after the discovery period, the court is required to hold an evidentiary hearing. *Id.* At the hearing, the plaintiff has the burden to show by a preponderance of the evidence that the defendant's petitioning activity was without factual support or any arguable legal basis and that the plaintiff suffered actual injury as a result of the petitioning activity. *Id.* If neither party avails himself of the evidentiary hearing, the court must decide whether the plaintiff met his burden by a preponderance of the evidence based solely on the pleadings and affidavits submitted by both parties for and against the special motion to dismiss. *Id.*

## II. Does Fournier Meet Her Burden to Show that Her Actions were Petitioning Within the Meaning of Section 556?

In this first step of the burden shifting procedure, Fournier must show that her

activities amount to petitioning. The Legislature has protected petitioning activity by broadly defining it under section 556. *Desjardins v. Reynolds*, 2017 ME 99, ¶ 18, 162 A.3d 228. Section 556 clarifies that "a party's exercise of its right of petition"

> means <u>any written or oral statement made before or submitted to a legislative, executive or judicial body</u>, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; <u>any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body</u>, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

(emphases added). In its broad construction of petitioning activities, the Law Court has determined that petitioning includes a letter written to a newspaper for the purpose of "expand[ing] the public consideration of a controversial issue recently considered by the Legislature," *Schelling v. Lindell*, 2008 ME 59, ¶ 12, 942 A.2d 1226, and letters to a newspaper to influence the outcome in a dispute between a city and a contractor, *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 7, 847 A.2d 1169. Regarding reports to law enforcement, the Court stated that "there can be no legitimate argument" that a defendant's report to a sheriff's office of a town official's alleged history of arriving at town meetings drunk after having driven his vehicle there, "qualify as petitioning activity." *Desjardins*, 2017 ME 99, ¶ 11, 162 A.3d 228. Additionally, the District Court of Maine has stated that reports to law enforcement could clearly be covered by section 556. *Lynch v. Christie*, 815 F. Supp. 2d 341, 346 n.6 (2011) (favorably cited by *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 4, 143 A.3d 788).

### A. Are Fournier's Activities Petitioning Within the Meaning of Section 556?

The activities that Plaintiffs take issue with, but Fournier claims are petitioning are (1) serving them with the Notice, and (2) "procuring" civil proceedings through Thibeault

by way of a harassment notice and temporary protection order.[4] Whether these actions amount to petitioning are discussed below.

### 1. Does Fournier's Notice of Claim Amount to Petitioning?

Fournier argues that her Notice is petitioning activity, in part based on the Plaintiffs' assertions in their opposition to her Second Motion to Dismiss that the Notice is a "court document or process." Plaintiffs maintain that the Notice does not fit within the definition of petitioning set forth in Section 556, specifically that it was not "reasonably likely to encourage consideration or review" by a governmental body because it was never communicated to any person that might bring it to that body's attention. Moreover, they argue that it actually did not encourage any consideration or review of Fournier's claims.

The Notice is petitioning activity. The Law Court has recognized the broad definition that the Legislature has provided for petitioning activity. It is reasonably likely that the Notice could eventually lead to consideration or review by a judicial body. The Law Court has never held that activity cannot be petitioning because it does not actually lead to review by a governmental body. Because the Notice was sent pursuant to statute, and could have reasonably led to review or consideration by a judicial body, it is petitioning activity that falls within section 556.

### 2. Do Fournier's Actions Relating to Thibeault's Protection From Harassment Requests and Harassment Notices that She Obtained from the TPD Amount to Petitioning?

Preliminarily Fournier argues, based on the allegations listed in Plaintiffs' Amended Complaint 3, that her providing a written "Victim Impact Statement" to the

---

[4] Fournier asserts that the Plaintiffs' claim is based on her providing the Victim Impact Statement to the police, but the Plaintiffs assert that their claim is based on her encouraging and convincing Thibeault to commence and carry on the civil proceeding. This is discussed below.

6

TPD in support of Thibeault's and Brooks's harassment notices against Quirion is petitioning as it is a statement submitted to the executive body.[5] Fournier is correct that a victim impact statement provided to police is petitioning under the protection of section 556. However, in response, the Plaintiffs state that Count II is "not based on the victim impact statement at all. It is based on Fournier's actions in convincing Thibeault to commence an action for a protection from harassment order." In a footnote to this contention they maintain that their claim is "based on Fournier's encouragement of *Thibeault's* exercise of *her* right to petition."

Plaintiffs point to *Gaudette,* where a newspaper published an article written and edited by newspaper staff, but contained many statements of a member of the public. 2017 ME 87, ¶¶ 4-6, 160 A.3d 539. The newspaper filed a special motion to dismiss the plaintiffs' complaint, which the trial court granted. *Id.* ¶ 8. On appeal, the newspaper argued that the article was petitioning activity under section 556. *Id.* ¶ 9. The Court emphasized that the anti-SLAPP statute "applies when the moving party asserts that claims 'against the moving party are based on the moving party's exercise of *the moving party's* right of petition.'" *Id.* ¶ 15 (quoting 14 M.R.S. § 556). Therefore, "[u]nless a newspaper is petitioning on its own behalf, the newspaper is not exercising its own right of petition." *Gaudette,* 2017 ME 87, ¶ 15, 160 A.3d 539. A defendant only engages in petitioning activity when she is exercising her own right to petition.[6] *See id.* ¶ 17.

---

[5] Plaintiffs concede that Fournier obtaining her own harassment notices from the TPD and a temporary Protection From Harassment Order ("PFH") is petitioning covered by the statute.

[6] The Law Court alluded that in a prior case it allowed an attorney's statements on behalf of a client to amount to that client's petitioning under section 556. *Gaudette,* 2017 ME 87, ¶ 16, 160 A.3d 539. However, it explained that an attorney-client relationship includes agency duties, whereas a newspaper is unlikely to have any relationship, let alone a special relationship, with the subjects of its articles. Regardless, there is no special relationship alleged here between Fournier and Thibeault or Brooks.

7

In response, Fournier points to the thin allegations within Amended Complaint 3 which she claims do not state a plausible claim for relief, or show that Fournier "procured" or "caused" Thibeault or Brooks to initiate harassment actions against the Plaintiffs. The following paragraphs are the extent of the allegations contained within the Complaint to support that Fournier procured the civil proceedings.

- "Fournier also informed [] Thibeault and [] Brooks, parents of two of Fournier's then-students, of Quirion's presence at Target at the same time as the field trips." ¶ 57.

- "On June 5, 2014, Fournier gave to Topsham Police Department a 'Victim Impact Statement' in support of the requests of Thibeault and Brooks for harassment notices." ¶ 67.

- "Fournier procured the civil proceedings by Thibeault without probable cause to believe that Quirion had harassed Thibeault of her son." ¶ 109.

- "Quirion's constitutionally and statutorily protected activities were a substantial and motivating factor in Fournier's causing Thibeault and Brooks to obtain a harassment notice from the Topsham Police Department . . . ." ¶ 127.

Despite the Complaint being light on how Fournier allegedly procured, convinced, or encouraged Thibeault and Brooks to obtain civil proceedings against the Plaintiffs, Maine's notice pleading requirements are forgiving. *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228. Notwithstanding these forgiving requirements, a special motion to dismiss under section 556 is "a more precise mechanism." *Id.* Litigants are "limited in their anti-SLAPP filings to the universe of facts as actually alleged in the plaintiff's complaint" and may not state new allegations for the first time in response to a special motion to dismiss. *Id.* ¶ 19.

Here, Amended Complaint 3 very briefly alleges that Fournier procured the harassment actions. Therefore, the Plaintiffs are not stating new allegations, but are fleshing out the allegations in their Complaint. Although Fournier is correct that a Victim Impact Statement provided to the TPD is petitioning, to the extent that Plaintiffs allege

8

that she convinced Thibeault or Brooks to obtain civil actions against the Plaintiffs, that is _them_ exercising _their_ right of petition, not Fournier exercising hers. Therefore, Count II is not based on petitioning activity. Fournier's special motion to dismiss is denied so far as it relates to the Plaintiffs' allegations that she procured civil proceedings via Thibeault.[7]

### III. Do Plaintiffs Meet Their Burden to Show Prima Facie Evidence that Fournier's Exercise of Her Right to Petition was (1) Devoid of Any Reasonable Factual Support or Any Arguable basis in Law; and (2) That it Caused Them Actual Injury?

At the next step in the burden shifting framework, the court must consider the Plaintiffs' opposition to the Special Motion to Dismiss. The burden shifts to Plaintiffs to show two things regarding Fournier's petitioning. First, they must show through their pleadings and affidavits "prima facie evidence that the defendant's petitioning activity was devoid of any reasonable factual support or any arguable basis in law." _Gaudette_, 2017 ME 86, ¶ 17, 160 A.3d 1190. Second, they must show that the defendant's exercise of her right to petition caused them actual injury. _Id_. A plaintiff may fail to meet his burden by an absence of evidence on either of the two elements. _Id_. If the plaintiff does not meet his burden, the special motion must be granted either partially or wholly. _Id_.

Similar to any other motion to dismiss, and in line with section 556, the court "is permitted to infer that the allegations in the [plaintiff's] pleading and factual statements in affidavits in its response to a special motion to dismiss are true." _Camden Nat'l Bank v. Weintraub_, 2016 ME 101, ¶ 11, 143 A.3d 788. A plaintiff showing "some evidence" satisfies

---

[7] Because Count IV, violation of the MCRA, is based in part on Thibeault's and Brooks' harassment notices from the TPD that contained the threat of arrest, the court also denies Fournier's Special Motion to Dismiss as it relates to those notices because they are not based on Fournier's petitioning. This Judgment later addresses whether Count IV is able to go forward to the extent that it is based on Fournier's own petitioning activity in obtaining the harassment notices and PFH on her own behalf.

9

the burden of establishing a prima facie case. *Id.* The prima facie standard is low, and "does not depend on the reliability or the credibility of evidence, all of which may be considered at some later time in the process." *Id.* In *Gaudette,* the Court described the plaintiff's burden under section 566 as requiring him to show "that the petitioning activity was baseless."[8] 2017 ME 86, ¶ 15, 160 A.3d 1190. Finally, the level of evidence necessary at this stage in the burden shifting framework has been recently described as "meeting merely a burden of producing evidence that, *if* believed, would satisfy the greater burden of persuasion." *Davis v. McGuire,* 2018 ME 72, ¶ 18, 186 A.3d 837.

## A. Do Plaintiffs Meet Their Burden Regarding Fournier's Petitioning?

This judgment now addresses whether Plaintiffs can meet their burden to show that Fournier's Notice of Claim and her PFH and harassment actions were devoid of any factual support or any arguable basis in law.

### 1. Do the Plaintiffs Show Some Evidence that Fournier's Notice of Claim was Devoid of Any Factual Support or Arguable Basis in Law?

The Plaintiffs argue that because Fournier did not read the letter sent from Quirion to the District[9] that contained the allegedly defamatory statements, she had no reasonable factual basis for her Notice. They additionally contend that she had no arguable legal basis for the claims because Fournier cannot meet the elements of the torts she alleged in the Notice.

The court is unconvinced by Plaintiffs' argument that because Fournier did not read the letter, she therefore cannot have had any reasonable factual support for her

---

[8] Because of *Gaudette's* clarification of the burden shifting analysis, now, when conflicting facts are alleged there is no requirement to automatically grant or deny the special motion to dismiss as was the case in *Morse Brothers* and *Nader I* respectively. *Id.* ¶ 13.

[9] Fournier is employed by Maine School Administrative District 75 (the District).

claims. A supervisor told her that the claims were accusatory, would be upsetting, and were potentially "slanderous."[10] A District attorney wrote to the Plaintiffs stating that she thought the statements in the letter were defamation per se. Fournier also provided the letter to her own attorney who prepared the Notice based on it. Just because Fournier did not read the letter herself until sometime later does not mean that her Notice was without factual support or an arguable basis in the law.[11]

Plaintiffs next allege that Fournier had no legal basis for any of the claims in the Notice. They go through the elements of each of Fournier's claims and state why Fournier cannot prove them. For the defamation claim, they argue that there was no false statement, their statements were privileged, and they were not made with malicious intent. Regarding intentional infliction of emotional distress, they contend that letters to a supervisor alleging an employee's incompetence cannot amount to extreme and outrageous conduct which would support an emotional distress claim. For negligent infliction of emotional distress (NIED), they assert that because Plaintiffs owed no special duty to Fournier, and because she did not witness physical harm to someone closely related to her, that there is no way she could maintain a claim for NIED. Finally, regarding

---

[10] Fournier supports her motion with many portions of the proceedings from the prior suits – trial testimony, depositions, prior complaints, and so on. Plaintiffs take issue with this as Fournier does not provide her own affidavit addressing each of these documents. Her attorney, however, submitted an affidavit that the materials are true and correct copies from the prior proceedings and available to the public. Plaintiffs do not raise any concerns to the documents' trustworthiness, and, in fact, most of the information contained in those documents was given under oath. The court has considered parts of these documents in coming to its conclusion.

[11] Plaintiffs contend that because neither the District nor Fournier claim that their statements about Fournier being incompetent, unable to communicate effectively with Quirion and Pollack, dishonest, retaliatory, and intentionally harming B.P. are untrue that Fournier had no factual basis for her defamation claim. Despite Plaintiffs' contention, Fournier's failure to state that these allegations are false does not amount to "some evidence" that her petitioning was without a factual basis.

interference with contractual relations, Plaintiffs argue that Fournier never alleged fraud or intimidation on their behalf, and point out that Fournier kept her job, and received tenure even after Quirion's letters to the District.

Despite Plaintiffs' contentions, Fournier was not required to support her Notice with specific allegations in support of her claims that would withstand potential legal defenses asserted by them. That is, however, exactly what the Plaintiffs present for "some evidence" that Fournier's petitioning was without any arguable basis in law. Plaintiffs' assertions support plausible defenses to the claims, or point out some of the claims' weaknesses. They do not offer "some evidence" to show that Fournier's claims were devoid of any arguable basis in the law. Therefore, the Plaintiffs have not met their burden to show "some evidence" that the Notice was devoid of any reasonable factual support or arguable basis in law.

### 2. Do the Plaintiffs Show Some Evidence that Fournier's Harassment Actions were Devoid of Any Factual Support or Arguable Basis in Law?

The Plaintiffs argue that Fournier had no factual support or arguable basis in law to seek a harassment notice from the TPD against Quirion, or to initiate a PFH proceeding in the District Court. They contend that because Fournier occasionally used the word "coincidence" to describe when Quirion was at the same locations as her class field trips, [12] and behind the school bus, that her seeking the actions was without factual basis.

Additionally, they maintain that Fournier's affidavit in support of her temporary PFH was inconsistent with her testimony at the hearing, and she therefore had no factual or legal support for her claims. Further, any fear she had of the Plaintiffs was not the type that the statute is designed to protect.

---

[12] Quirion's son, B.P., did not attend these field trips.

12

Fournier asserts that because a District Court judge granted her a temporary PFH after reviewing her complaint and affidavit shows that she had factual support and an arguable basis in law.[13] She also points to the observations of other parents and the bus driver who described Quirion's presence at the field trips and behind the bus as disturbing, creepy, that it occurred frequently, and was not coincidental. They also point to Plaintiffs' Amended Complaint 3 which provides that "most of the time" Quirion being in the same place as the field trips was coincidental, to infer that sometimes Quirion's presence was intentional.

After comparing Fournier's affidavit in support of her temporary PFH with her hearing testimony, the court finds no meaningful inconsistencies. The affidavit outlines how Fournier used to teach B.P., she no longer teaches B.P. at Quirion's request, and lists eleven instances from 2012 through 2014 when she has seen Quirion on field trips that B.P. did not attend, or when she saw Quirion acting peculiarly on school grounds. Although the District Court judge ultimately granted Quirion's motion for judgment as a matter of law after Fournier presented her evidence at the PFH hearing[14] and declined to grant her a permanent PFH, does not mean that her request for such was without factual support or any arguable basis in law. Indeed, the judge questioned Fournier on whether she was basing her claims on Quirion intending to cause her emotional distress

---

[13] The court may enter a temporary order if "[i]t appears clearly from a verified complaint or an affidavit accompanying the complaint that . . . the plaintiff . . . may be in immediate and present danger of physical abuse from the defendant or in immediate and present danger of suffering extreme emotional distress as a result of the defendant's conduct . . . ." 5 M.R.S. § 4654(2)(A)(1).

[14] Fournier was represented during this hearing. Attorney Amber Collins provided a declaration that she is familiar with PFH proceedings, she assisted Fournier in preparing and filing the complaint against Quirion, and she believed that Fournier's claim had both a factual and legal basis to seek the PFH. Though not dispositive, this supports the notion that Fournier had factual support and an arguable basis in the law to seek a temporary PFH.

under the statute. Ultimately, the judge determined that Quirion's actions did not violate the law and that Fournier could not show that Quirion intended to cause her fear or intimidation, or that she intended to cause Fournier emotional distress. Notwithstanding the grant of judgment as a matter of law, insufficient evidence to successfully obtain a PFH is different than a request for a PFH being wholly devoid of factual or legal support.

Although not dispositive, the court finds weight in an attorney representing Fournier in filing for and seeking a PFH, and in a judge granting her a temporary PFH, even if a permanent order was denied. Despite the Plaintiffs' showing that Fournier sometimes referred to Quirion being in the same place as her field trips as being a "coincidence," the court determined that is not sufficient to meet their burden to show "some evidence" that Fournier's seeking a PFH and a harassment notice from the TPD were devoid of any factual support or arguable basis in law.

Because the court has determined that Fournier's Notice of Claim and her petitioning for harassment notices and a PFH has factual support and an arguable basis in law, her Special Motion to Dismiss is granted for Counts I, III, and to the extent it is based on Fournier's petitioning actions, Count IV. Despite the partial grant of the Special Motion, the court continues its analysis because it has also determined that the Plaintiffs have not met their burden to show that Fournier's petitioning activities caused them actual injury. A discussion of actual injury follows.

IV. **Do Plaintiffs Show Some Evidence of Actual Injury Caused by Fournier's Petitioning?**

The second stage of the burden shifting analysis requires the plaintiff to show not only that the defendant's petitioning was devoid of reasonable factual support or any arguable basis in law, but also that the defendant's petitioning caused him actual injury. *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 11, 143 A.3d 788. The Law Court has

14

interpreted section 556's actual injury standard to be met when there is evidence in the record that allows damages in a definite amount to "be determined with reasonable certainty." *Id.* ¶ 12 (quoting *Schelling v. Lindell*, 2008 ME 59, ¶ 17, 942 A.2d 1226). Reasonable certainty is distinguished from mathematical certainty, but the damages amount "cannot be left to mere guess or conjecture." *Id.* "[C]laimed loss of sleep, mental suffering, and embarrassment are not legally sufficient to meet the actual injury requirement imposed by the anti-SLAPP statute." *Schelling*, 2008 ME 59, ¶ 18, 942 A.2d 1226. Damages are not allowed for emotional distress alone, "unless it is so severe that no reasonable person could be expected to endure it." *Id.* ¶ 25 (internal quotations omitted).

In this case, the Plaintiffs concede that they have not shown sufficient emotional harm to qualify as actual injury. However, they maintain that attorney fees are an actual injury sufficient to defeat a special motion to dismiss. Fournier argues that Plaintiffs are both licensed attorneys who regularly represent themselves, therefore they cannot claim attorney fees as actual injury. She further maintains that the Plaintiffs are not entitled to attorney fees for responding to her Notice. Also, because attorney fees are not recoverable under the common law of defamation or intentional infliction of emotional distress even if Fournier had filed suit, they cannot support a finding of actual injury as they are not compensable under the law.

The Law Court has not spoken directly to whether attorney fees amount to actual injury for purposes of an anti-SLAPP special motion to dismiss. However, what they have stated about attorney fees supports Fournier's position. The Court has made clear that in the context of a special motion, "the common law doctrines associated with libel and slander[,]" such as damages per se, are not available or sufficient to meet the actual injury prong of the burden shifting framework under section 556. *Schelling v. Lindell*, 2008 ME

15

59, ¶ 27, 942 A.2d 1226. The Court briefly addressed pre-litigation attorney fees in *Desjardins*. There, in his opposition to the special motion to dismiss, the plaintiff claimed actual injury in the form of a $500 expenditure that he paid to an attorney he hired to investigate reports to a sheriff's office. 2017 ME 99, ¶ 15, 162 A.3d 228. However, in his lengthy complaint, he mentioned this retaining of counsel for investigation purposes only briefly, and did not seek damages for the cost. *Id.* ¶ 16. The Court concluded that the plaintiff was "alleging a new form of harm for the first time solely in response to the special motion to dismiss" and was not permitted to expand the scope of litigation in response to the special motion. *Id.* ¶ 19.

Specifically, the *Desjardins* Court noted that "[b]ecause [plaintiff's] pre-litigation investigation expenditure constitutes no part of his request for damages in his complaint, we reject that cost as an 'actual injury' within the meaning of section 556 at the special motion to dismiss stage." *Id.* The Court continued on in a footnote that because the Plaintiff had not adequately pled injury in his complaint, he did not meet his burden and therefore it "need not consider whether such self-generated damages otherwise can satisfy the 'actual injury' component of an anti-SLAPP opposition." *Id.* ¶ 19 n.5.

The case before the court is slightly different, as the Plaintiffs have alleged damages in the form of attorney fees from the get-go.[15] Similar to the investigation in *Desjardins*, however, responding to Fournier' Notice was a pre-litigation expenditure. Moreover, the Plaintiffs responded to her Notice by serving their own notice of claim on her. Although Plaintiffs were within their legal right to serve their own notice of claim, it

---

[15] Fournier claims that the Plaintiffs never alleged attorney fees for Counts II and III, therefore they cannot show actual injury and those claims should be dismissed out of hand. However, as Plaintiffs point out, they alleged damages in the form of attorney fees in paragraph 97 of Amended Complaint 3, which they incorporated by reference in Counts II and III.

16

was not a required response, and therefore is akin to "self-generated damages." Given this fact pattern and what the *Desjardins* Court stated, attorney fees for the Notice do not amount to actual injury within the meaning of section 556.

It is unknown exactly what attorney fees Plaintiffs have paid in relation to Fournier's harassment actions against Quirion.[16] As Fournier points out, Plaintiffs often represent themselves, but the court notes that Quirion was represented by another attorney during the PFH hearing. However, Fournier is correct that attorney fees are generally not recoverable as damages in tort cases, except in narrow circumstances, or when special exceptions, such as an existing fiduciary duty, apply. *See Estate of Weatherbee*, 2014 ME 73, ¶ 13, 93 A.3d 248 (attorney fees could not be sought when there was no alleged abuse of process that would justify the common law exception to the American Rule); *Murphy v. Murphy*, 1997 ME 103, ¶ 15, 694 A.2d 932 ("Although a prevailing litigant generally has no right to recover attorney fees, a court may award attorney fees for some kinds of tortious conduct . . . including a breach of a fiduciary duty.") (internal citation omitted)).

Plaintiffs have not met their burden to show that Fournier's petitioning activity caused them actual injury. Any response to Fournier's Notice was a pre-litigation expenditure that was self-generated. In relation to Fournier's harassment actions, no exception applies to the general rule that attorney fees are not recoverable. To allow the Plaintiffs to recover attorney fees would allow recovery in an instance where the Legislature has declared it impermissible, as the District Court judge did not determine

---

[16] Fournier directs the court to the PFH statute, which states that attorney fees are only recoverable "[i]f a judgment is entered against the plaintiff and the court finds that the complaint is frivolous . . . ." 5 M.R.S. § 4655 (1-A). Although Fournier was unsuccessful, the court, in its Order on Motion for Findings and Conclusions did not find her complaint frivolous.

17

that Fournier's complaint seeking a PFH was frivolous. If the Plaintiffs could claim attorney fees as actual injury, it would circumvent 5 M.R.S. § 4655(1-A). For all the foregoing reasons, The court determines that the Plaintiffs have not met their burden to show actual injury, within the meaning of section 556, that was caused by Fournier's petitioning activity.

## CONCLUSION

The court grants Fournier's Special Motion to Dismiss as it relates to Count I, abuse of process for the Notice of Claim, and Count III, wrongful use of civil proceedings for Fournier's harassment notices and actions against Quirion. The court denies the Special Motion to Dismiss for Count II, Fournier's procurement of Thibeault's harassment actions against Quirion. Finally, regarding Count IV, violation of the MCRA, the court grants Fournier's Motion as it relates to Fournier's harassment actions against Quirion, but denies it to the extent it is based upon Thibeault's harassment actions.

The Defendant is awarded costs and attorney's fees.

The Clerk is directed to incorporate this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Dated: June 11, 2019

Daniel I. Billings
Justice, Maine Superior Court

18

STATE OF MAINE
SAGADAHOC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.: BATSC-CV-2018-24

MATTHEW POLLACK
and
JANE QUIRION

   Plaintiffs,

  v.

JESSICA FOURNIER

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON SECOND
MOTION TO DISMISS**

This matter is before the court on the Defendant's Second Motion to Dismiss.

## BACKGROUND

Jane Quirion (Quirion) and Matthew Pollack (Pollack) (collectively the Plaintiffs) have brought a third complaint for claims based on the Defendant's, Jessica Fournier (Fournier), alleged retaliation against them. Some procedural history is in order.

On June 2, 2014, the Plaintiffs filed a Second Amended Complaint (Complaint 1) in federal district court. The Plaintiffs filed on behalf of themselves and as next friends of their son, B.P.. The named defendants in Complaint 1 were Regional School Unit No. 75 (the District); Bradley Smith, the Superintendent of the District; and Kelly Allen, an autism consultant employed by the District. Smith and Allen were alleged to have been acting under color of law, within their employment for the District, and were sued in their individual capacities. Complaint 1 referred to Fournier as the "classroom teacher." Complaint 1 included incidences of Quirion being in the same location of Fournier's class field trips that B.P. was not on. It described disputes between the Plaintiffs and the

1

District, Fournier's alleged defamation claims based on the Plaintiffs' request for a new classroom teacher, and her August 2012 Notice of Claim (Notice) served on the Plaintiffs, among other issues. Amid other claims, the Plaintiffs alleged retaliation in violation of the First Amendment, the Rehabilitation Act, and the Americans with Disabilities Act (ADA) based on the defendants' actions from 2012 through 2013.

A few weeks prior to Complaint 1, on May 23, 2014, the Plaintiffs filed a different Complaint (Complaint 2) in federal district court. The named defendants were the District; Patrick Moore, the Director of Special Services of the District; and Tanji Johnson, a special education administrator employed by the District. Both Moore and Johnson were alleged to have been acting under color of law, within their employment for the district, and were sued in their individual capacities. Fournier is referenced by name in Complaint 2, as is her alleged defamation claim against them and her August 2012 Notice. The claims in Complaint 2 included retaliation in violation of the First Amendment, the Rehabilitation Act, and the ADA, based on the defendants' actions from 2012 through late 2013.

The district court consolidated the cases on October 23, 2014 and they were treated as a single suit (prior suit). Plaintiffs alleged other actions of Fournier's, that were not included in the Complaints, as supporting their retaliation claims during the discovery process. These actions included Fournier allegedly encouraging other parents to initiate harassment actions against the Plaintiffs, and initiating her own harassment action. Ultimately, all of the Plaintiffs' claims were addressed in some fashion from 2015 through 2017 by way of motions to dismiss, motions for summary judgment, stipulations of dismissal, and ultimately a jury verdict and First Circuit affirmance.

Turning to the instant action, on July 27, 2018, the Plaintiffs filed a third complaint (Complaint 3) in Superior Court. Fournier is the sole named defendant. Complaint 3

2

alleges that Fournier is, and at all relevant times was, an employee of the District, ¶ 4, acting alone and in concert with the District, and acting under color of law, ¶ 138. Many of the prior allegations in Complaint 1 and Complaint 2 are referenced verbatim in Complaint 3,[1] including the incidences of Quirion being in the same places as Fournier's class field trips, B.P.'s upset on a certain date, and their request to have B.P. assigned to a new teacher, among others. Complaint 3 also discusses the Plaintiffs' alleged defamation of Fournier and her August 2012 Notice against them. For the first time in a complaint, Complaint 3 contains allegations of wrongful use of civil proceedings. Plaintiffs allege that Fournier encouraged other parents to initiate harassment notices and proceedings against the Plaintiffs, assisted them in doing so, and herself obtained a temporary protection from harassment order from the District Court. These harassment actions and proceedings were addressed in discovery in the prior suit and used by the Plaintiffs to bolster their retaliation claims. In Complaint 3, the Plaintiffs alleged that

> Fournier's purpose in taking all of the actions against Pollack and Quirion described in this complaint was to prevent [them] from speaking about her performance as an employee for the District, from observing her work as an employee for the District, from filing complaints about her work with the District, from attempting to have her removed as B.P.'s teacher and as a teacher with the District generally, and from otherwise advocating for their son, B.P., to the extent that the advocacy criticized her work with B.P.

¶ 114. The Plaintiffs alleged seven counts in Complaint 3. These included abuse of process, two counts of wrongful use of civil proceedings, unlawful retaliation for exercise of First Amendment rights, retaliation under the Rehabilitation Act, retaliation under the ADA, and violation of the Maine Civil Rights Act. On August 10, 2018, Fournier filed a Notice of Removal to federal court. A month later, on September 10, 2018, she filed her

---

[1] As Fournier describes in her briefing, many of the same headings and factual allegations under them are literally copied and pasted from one complaint to another.

3

first Motion to Dismiss. The Plaintiffs then filed a First Amended Complaint (Amended Complaint 3) on September 25, 2018, which discarded their claims arising under federal question jurisdiction, and alleged that Fournier was at all times acting in her individual capacity, not within her scope of employment with the District, or in agency or concert with any of the defendants from the prior suit.

Thereafter, on October 8, 2018, Plaintiffs filed a Motion to Remand. Fournier filed a Second Motion to Dismiss on October 19, 2018, and a Special Motion to Dismiss on the same date. The parties predictably objected to and replied to the opposing parties' motions. On January 15, 2019, the federal court declined Fournier's invitation to exercise supplemental jurisdiction over the remaining claims, and remanded the matter back to this court. On February 11, 2019, this court ordered Fournier to indicate in writing, and pay the filing fees required by court rules, if she wished the court to consider her pending motions to dismiss. On February 19, 2019, Fournier communicated her request for the court to address the pending motions, provided the necessary filing fees, and on March 1, 2019, provided an Appendix of Documents from the prior suit. Four claims need to be addressed on Fournier's Second Motion to Dismiss: abuse of process; two wrongful use of civil proceedings claims; and violation of the Maine Civil Rights Act.

## DISCUSSION

To survive a motion to dismiss,[2] the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). The facts pled must be sufficient to "to raise a right to relief above the speculative level." *Id.* at 555. When the facts in the complaint, accepted as true, permit the "reasonable

---

[2] The court applies federal law in determining the preclusive effect of a prior federal judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

4

inference that the defendant is liable for the misconduct alleged[,]" the plaintiff survives a motion to dismiss. *Id.* The court views the facts in the complaint and reasonable inferences to be drawn from them in the light most favorable to the nonmoving party. *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). The plausibility standard is not to be compared to a probability standard, but it requires "more than a sheer possibility" that a defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not allow a complaint to survive a motion to dismiss. *Id.*

Fournier argues that the Plaintiffs are attempting a third bite at the apple by bringing this lawsuit against her, as it contains virtually identical allegations as the two prior suits that they brought against the District and other individuals employed by it. Because the Plaintiffs' claims are ultimately based on the same alleged retaliation against them and could have been brought against Fournier in the original suits, she argues that res judicata requires dismissal of the current case. Fournier additionally maintains that the Plaintiffs' claims should all be dismissed on the merits for failure to state a claim upon which relief may be granted, and some are barred by the statute of limitations. The Plaintiffs argue that Fournier is judicially estopped from asserting a res judicata defense, she acquiesced to the splitting of the causes of action and the parties, and that res judicata cannot apply because the claims and the parties are not sufficiently identical. Moreover, they contend they have sufficiently stated claims that survive a Rule 12(b)(6) motion.

At the outset, the parties disagree about what documents this court may consider in deciding Fournier's Second Motion to Dismiss. She argues that because her motion is based on res judicata, it is inevitable that this court will review the record of prior proceedings. Fournier argues that this is possible to do without converting the motion into one for summary judgment, because the court is allowed to take into consideration

5

documents incorporated by reference into the complaint, matters of public record, and anything else that is susceptible to judicial notice. The Plaintiffs argue that the exception allowing the court to look to documents outside the complaint is narrow. They maintain that extraneous documents cannot be used to challenge the allegations in the complaint, and that when a court takes judicial notice of documents, it does so not for the truth of the matter asserted in them, but to establish the fact of the prior litigation and filings. Additionally, the parties dispute whether the court may consider the directly contradictory allegations contained in Complaint 3 before the Plaintiffs amended it. Each issue is addressed in turn below.

I. **What Documents May Be Considered in this Second Motion to Dismiss and What May They Be Considered For?**

Generally, a court may not consider documents that are outside the complaint, or not expressly incorporated within it, unless the motion is converted into one for summary judgment. *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Despite this, a narrow exception exists "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). When the complaint relies on such documents, and no party challenges their authenticity, the document "merges into pleadings" and is properly within the court's purview on a motion to dismiss. *Alt. Energy, Inc.*, 267 F.3d at 33. Accordingly, "[u]nder First Circuit precedent, when a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), then the court can review it upon a motion to dismiss." *Id.* at 34 (quotation marks omitted).

6

The First Circuit has explained that lack of notice to the plaintiff is the main concern in looking to documents contained outside the complaint. *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). That issue is alleviated when the plaintiff has actual notice of the documents and has relied on them in framing the complaint. *Id.* In cases where the court has permissibly looked beyond the complaint to documents, it has interpreted a settlement agreement that was referenced in the complaint, *Alt. Energy, Inc.*, 267 F.3d at 34, and it has drawn facts from child protection proceedings submitted by the plaintiff to determine whether court-appointed psychologists were entitled to qualified immunity from suit, *Watterson*, 987 F.2d at 4-6. In a case with a similar procedural posture as the one at bar, a court looked to the evidence that was presented during trial in the first case via the court's order denying the defendant's motion for judgment as a matter of law. *Havercombe v. Dep't of Educ. of the Commonwealth*, 250 F.3d 1, 9 (1st Cir. 2001). The court explained that when it compared the trial evidence "to the universe of reasonable inferences" that could be drawn from the factual allegations in the later complaint, it could not conclude that any new ground was covered that gave rise to a different "transaction" than was already litigated to a jury verdict in the first case. *Id.*

Here, the Plaintiffs explicitly reference some of the documents in their Amended Complaint 3. This includes Fournier's Notice of Claim, ¶ 32, Quirion's classroom reassignment request, ¶ 45, Fournier's Victim Impact Statement, ¶ 67, and Harassment Notices served on Quirion, ¶ 68. Other documents, such as the prior court orders and judgments, trial testimony, Plaintiffs' answers to interrogatories in the prior case, deposition testimony and the like are not referenced in Plaintiffs' Amended Complaint

7

3.[3] The Plaintiffs have not disputed the authenticity of any of the exhibits that Fournier attached to her Second Motion to Dismiss. Nor are there any concerns about the Plaintiffs having notice of these documents, as they authored many of them and were present for the depositions and trials. Additionally, any reports to the police are public records, and "matters of public record are fair game in adjudicating Rule 12(b)(6) motions." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003).

Because the instant Motion requires the court to determine whether the Plaintiffs' claims are barred by res judicata, their Amended Complaint 3 references some of the documents, and the rest are either public records or susceptible to judicial notice, this court will consider them in deciding the Second Motion to Dismiss. When this court takes judicial notice of a document, it does so "not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

## II. May the Court Consider the Factual Changes from Complaint 3 to Amended Complaint 3?

Fournier argues that the Plaintiffs' allegations in Complaint 3, that she was acting under color of law and as an employee of the District, constitute admissions that this court may consider despite their subsequent filing of Amended Complaint 3 which states that she acted at all times individually and in no way related to the District or in agency with it or any of the prior defendants. The Plaintiffs conversely contend that Amended Complaint 3 entirely superseded Complaint 3 and therefore they are no longer bound by

---

[3] However, the Plaintiffs allude to the prior litigation when they assert that Fournier was not acting in the scope of her employment with the District and none of the prior defendants (Allen, Moore, Johnston, or Smith) assisted her or acted as her agent.

8

the statements in it, and this court may not look to Complaint 3 for any purpose at all in deciding the Second Motion to Dismiss.

The First Circuit has stated that, once filed, and amended complaint normally supersedes the prior complaint. *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008). Because of this, "facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). When addressing different facts asserted in an amended complaint for the purposes of judicial estoppel, the First Circuit explained that statements in a superseded complaint are not always "null and void for all purposes[,]" but instead, in certain circumstances, those statements may be party admissions, and used as such despite that complaint's later amendment. *Id.* at 144-45. Again addressing judicial estoppel, the court explained that absent "some sign of unfair advantage," retraction of some statements made in a prior complaint did not justify the invocation of judicial estoppel. *Id.* at 145.

By using "normally" to describe when an amended complaint supersedes the original, the First Circuit has left the door cracked for future courts to look to the prior complaint in certain instances. A magistrate judge addressed this issue in a recent decision, *Krah v. County of Lincoln*, No. 2:16-cv-00415-JDL (D. Me. Apr. 2, 2017). There, the defendants urged the court to take into account allegations in the original complaint that differed from the amended complaint. *Id.* at *7. After addressing the general rule, the court noted the defendants' argument that some federal courts in other circuits recognize an exception, and allow the prior complaint to be considered when a plaintiff blatantly changes facts in response to a motion to dismiss, and the new facts directly contradict the facts in the original complaint.[4] In those instances, some courts have determined that they

---

[4] *See Colliton v. Cravath*, No. 08-0400-NRB, 2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sep. 23, 2008).

9

are permitted to accept the facts in the first complaint as true. *Id.* at *16. Despite the "normally" language employed by the First Circuit and the caselaw cited by the defendants, the magistrate judge declined to apply the exception in *Krah* because there was no indication that the First Circuit would follow that line of cases.

As the magistrate judge noted, whether a court can consider the facts in a prior complaint as true after it has been amended is unsettled law in the First Circuit. There is caselaw that supports both parties' respective positions. This court is of the opinion that because the First Circuit has stated that a court may not "normally" consider a prior complaint after a subsequent complaint is filed, and because it has allowed consideration of a prior complaint for purposes of deciding whether judicial estoppel applies,[5] that the court may consider the factual allegations in Complaint 3.

## III. Federal Claim Preclusion Elements

Fournier argues that the Plaintiffs have litigated against her employer and many of her coworkers for years and that they chose not to name her personally in the prior suit for strategic reasons. Despite not being a named defendant, she maintains that the prior suits actually centered around her, and the current suit should be dismissed on res judicata principles.

For their part, the Plaintiffs contend that Fournier is judicially estopped from asserting res judicata as a defense. They further maintain that Fournier acquiesced to the splitting of the causes of action from the prior suit and that she cannot show the elements of res judicata necessary to use it as an affirmative defense.

---

[5] *See InterGen N.V. v. Grina,* 344 F.3d 134, 145 (1st Cir. 2003).

Res judicata "serves the purpose of relieving parties of the cost and vexation of multiple lawsuits, conserving judicial resources, and encouraging reliance on adjudication." *Gonzalez-Pina v. Guillermo Rodriguez*, 407 F.3d 425, 429-30 (1st Cir. 2005) (quotation marks and ellipses omitted). The affirmative defense of res judicata may be raised and decided on a motion to dismiss if certain conditions are present. *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003). First, "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." *Id.* Second, those facts must conclusively establish the res judicata defense. *Id.* Federal law decides the preclusive effect of a federal-court judgment that is used to advance a res judicata defense. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Federal claim preclusion law bars a plaintiff from litigating claims in a subsequent action that could have been, but were not, litigated in an earlier suit." *Silva v. City of New Bedford*, 660 F.3d 76, 78 (1st Cir. 2011). The three elements of a res judicata defense are "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d at 16.

### i. Final Judgment on the Merits

The first element of res judicata that Fournier must prove is that there was a final judgment on the merits. Fournier provides Exhibit 1 which shows the Plaintiffs' claims in the prior suit and their resolutions. All claims have been resolved through the parties' various motions, First Circuit affirmance, jury verdict, and stipulations of dismissal with prejudice. "[A] voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the *res judicata* criterion." *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir.

11

1998). Plaintiffs do not dispute that Fournier has shown the first element of res judicata. Fournier has met her burden to show that there was a final judgment on the merits in an earlier proceeding.

### ii. Sufficient Identicality Between the Causes of Action in the Plaintiffs' Prior Suit and Current Suit

The First Circuit uses a "transactional approach" to determine whether the causes of action in an earlier and later suit are sufficiently related to support claim preclusion. *Silva v. City of New Bedford*, 660 F.3d 76, 79 (1st Cir. 2011). This approach

> does not focus on the labels or sources for the plaintiff's causes of action but instead considers whether the underlying factual bases for the causes are related in time, space, origin or motivation. In other words, we will find the required relationship if both sets of claims—those asserted in the earlier action and those asserted in the subsequent action—derive from a common nucleus of operative facts.

*Id.* (internal quotation marks, citations, and alterations omitted).

Fournier argues that the Plaintiffs' current claims arise out of the same transaction or series of transactions as the prior complaints because they are all premised on the same litany of facts from 2012 through 2014. Moreover, she maintains that Amended Complaint 3 is based on her alleged retaliation against the Plaintiffs despite their amending the complaint to remove their federal retaliation claims. Fournier points to the Plaintiffs' prior complaints, answers to interrogatories, and statements of material facts where they used her Notice and the various harassment actions procured against them as support for their retaliation claims. She additionally maintains that even though some of the factual bases for the claims in Complaint 3 took place very shortly after the Plaintiffs filed Complaint 2, that because all the events referred to in Amended Complaint 3 occurred before a final judgment on the merits in the prior cases, res judicata is supported here.

12

Plaintiffs contend that the claims in this suit are not sufficiently identical to those of the first suit because they do not rest on the same "operative facts." They argue that background facts do not amount to operative facts because operative facts must relate to Fournier's actions, not the Plaintiffs' actions. They state that they have alleged new conduct of Fournier's in Amended Complaint 3 and maintain that this court must look beyond the verbiage in common between the complaints and focus on the new facts alleged in the current complaint.

The Plaintiffs mischaracterize Fournier's argument. Fournier points out that the Plaintiffs still base their claims on her alleged retaliation against them, *see* Am. Compl. 3 ¶¶ 92; 95-96, much of which was addressed by the complaints in the prior suit, and could have been asserted against her in the prior suit. This is relevant for the transactional approach that the First Circuit uses in considering "whether the underlying factual bases for the causes are related in time, space, origin or motivation." *Silva*, 660 F.3d at 79. The Plaintiffs still base their claims in retaliation. The alleged retaliation occurred at nearly the same time (2012—2014) as the prior complaints. Fournier's alleged actions that the Plaintiffs reference in prior complaints, answers to interrogatories, and other pleadings are operative facts, not merely background facts.

### A. Is There a Common Nucleus of Operative Facts Between the Prior Suit and the Current Suit?

Plaintiffs point to other caselaw for the proposition that an overall relationship between the parties surrounding the events or actions that occurred leading to the lawsuits does not equate to a common nucleus of operative facts. *Cordell v. Howard*, 879 F. Supp. 2d 145 (D. Mass. 2012) is not binding on this court, but can be distinguished. There, the prisoner-plaintiff's first suit was brought against the warden of his current prison and the warden and clinical directors of the prison he was previously incarcerated

13

at. *Id.* at 150. After his first suit was dismissed, *id.* at 150-51, he brought a subsequent suit against four medical providers at his current prison who he alleged deprived him of his constitutional rights, *id.* at 147. The prisoner-plaintiff's second complaint survived a motion to dismiss based on res judicata grounds. *Id.* at 157.

The case at bar is different than *Cordell.* Here, the Plaintiffs initially filed suit against the District and its superintendent, but also against individuals employed by the District who Plaintiffs alleged retaliated against them. Those individual employees are similarly situated to Fournier as she was also an individual employed by the District, and the Plaintiffs claim that she retaliated against them. Moreover, in *Cordell,* the plaintiff's allegations against "medical staff" in the first suit were generally that they were unable to stabilize his condition, and they gave him too much of his medication which caused him pain. *Id.* at 151. Here, Fournier played a significant role in the prior suit and was referred to, according to her count, more than thirty times in one of the Plaintiffs' prior complaints, which also mentioned her Notice of Claim against them. Unlike *Cordell,* Fournier was particularly referenced at length in the prior Complaint, and some of her specific actions that the Plaintiffs currently complain about were alleged in it.

Plaintiffs cite *Sierra Club v. Secretary of Transportation,* 779 F.2d 776 (1st Cir. 1985) for the proposition that even if claims arise from the same complex of facts, that does not mean that they necessarily arise from the same nucleus of operative facts. There, the plaintiffs argued, and the First Circuit accepted, that two different permits issued by two different agencies, one state and one federal, were separate causes of action when the plaintiffs first sued one agency and later sued the second. *Id.* at 780. In coming to that conclusion, the court reasoned that "[e]ach action was performed independently of the others according to entirely different sets of regulations and by the staffs of different agencies. Each action can be considered a separate and distinct wrong." *Id.* at 780. The

14

court also explained that entirely different facts were necessary to prove the claim in the second suit. *Id.* The court further distinguished the actions because "[a] challenge to a specific aspect of a complex project such as this cannot as a general rule be permitted to bar an <u>entirely different</u> challenge to a <u>distinctly different</u> part of the project, especially where the challenged actions were taken by different agencies." *Id.* (emphases added).

Here, the Plaintiffs attempt to entirely separate Fournier from the District despite Complaint 3 referencing her being employed by it, that she was acting in the scope of her employment, and under color of law. In Amended Complaint 3, they about-face and now state that she was at all times acting individually, and in no way in concert or agency with the District or former defendants. However, it is impossible to ignore that Fournier is employed by the District, which makes her more closely related to the prior defendants, and less similar to the two entirely different agencies that issued permits in *Sierra Club*.

In the present case, even though different facts may be necessary to prove the wrongful use of civil proceedings, or abuse of process, these claims still arise out of the same common nucleus of operative facts as the prior suit. This common nucleus of operative facts is that the actions of the prior defendants, and now Fournier, which were discussed at length in the prior suit, were in retaliation against the Plaintiffs for their advocacy of B.P.. They are not entirely or distinctly different. Regardless of the "new" claims, it is impossible for the Plaintiffs to get around the fact that the claims are all based on alleged retaliation that a prior court, and jury, rejected. Moreover, in their prior pleadings they alleged that the District assisted Fournier with her harassment claim. This all amounts to the same common nucleus of operative facts being contained within this suit and the prior suit as "the underlying factual bases for that causes are related in time, space, origin, [and] motivation." *Silva v. City of New Bedford*, 660 F.3d 76, 79 (1st Cir. 2011).

## B. Could Fournier Have Been Named as a Defendant in the Prior Suit?

The Plaintiffs contend that this case is like *Negron-Fuentes v. UPS Supply Chain Solutions* where dismissal based on res judicata was inappropriate because the plaintiff could not have properly included the defendants named in the later complaint in the first complaint. 532 F.3d 1, 9 (1st Cir. 2008). The First Circuit explained that claim preclusion may be appropriate when parties are in privity or closely related to each other and not named in the prior suit and "where the claims were or could have been brought against the original defendant in the original suit." *Id.* at 10. Because neither condition was satisfied in that case, claim preclusion could not bar the later suit against the new defendant. *Id.* at 10-11.

Plaintiffs attempt to compare their circumstances to those in *Negron-Fuentes*. They allege that Fournier would not have been a proper party to Complaint 1 or 2 because the prior defendants were alleged to have been acting in their employment capacity for the District and therefore would have been immune from some of the claims that Plaintiffs currently assert. This argument appears valid until one looks at procedural posture of this case. In Complaint 3, Plaintiffs asserted that Fournier was an employee of the District, ¶ 4, and acting alone and in concert with the District, and under color of law, ¶ 138. After Fournier filed her first Motion to Dismiss on September 10, 2018, two weeks later the Plaintiffs amended their Complaint to assert that Fournier only ever acted individually, not as an employee of the District, and never as an agent of, or in concert with, the District or defendants in the prior suit, ¶¶ 131-33. This shows that the Plaintiffs originally did pursue their claims against Fournier's employer, and subsequently against her as its employee, and then asserted contradictory factual allegations, which would allow them to survive Fournier's first Motion to Dismiss.

16

Unlike *Negron-Fuentes*, the Plaintiffs could have brought their claims against Fournier in the prior suits that they filed. This is evidenced by the fact that Complaint 3 brought suit against Fournier in the same capacity that the Plaintiffs brought suit against the prior defendants. The Plaintiffs claim that this court should not look to Complaint 3 before it was amended because, after "no court ever accepted" their allegations in Complaint 1, 2, or 3, they are entitled to change their allegations and allege contrary facts. However, to not consider the change in allegations, or that the Plaintiffs previously alleged that the District assisted Fournier with her harassment claim, would allow the Plaintiffs to maintain a claim that otherwise would have been dismissed under res judicata principles, and undermine the principles supporting res judicata. This is not pleading in the alternative which is commonly accepted, but instead changing factual allegations, after initially asserting them, for the purpose of avoiding certain defenses.

Part of the principle underlying res judicata is avoiding judicial waste. *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003). It is also regarded as "a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1168 (1st Cir. 1991) (quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394 (1981). To ignore the Plaintiffs' Complaint 3 before it was amended, when it is unclear whether the First Circuit would adopt an exception to considering a prior complaint in circumstances such as these, would be a disservice to the principle and rule of res judicata. The court determines that Fournier could have been, and should have been, named as a defendant in the prior suit.

## C. Are There New Facts or is There a New Series of Events in the Complaint that Destroys the Identicality of the Causes of Action?

Plaintiffs argue that they have alleged "new facts or series of events" that make their current suit different from the prior two that were consolidated. Plaintiffs maintain that subsequent conduct by a defendant, which is the same type of conduct that a prior suit was based on, can create a new and different cause of action. They cite to *Gonzalez-Pina v. Guillermo Rodriguez*, 407 F.3d 425 (1st Cir. 2005) in support of their position. There, a plaintiff employee settled with a municipality in open court regarding his political discrimination claims. *Id.* at 428. After the settlement and his return to work, the plaintiff alleged that the municipality continued to discriminate against him. *Id.* The court found, and the First Circuit affirmed, that the defendant's claims for the new discrimination after his return to work were not barred by res judicata. *Id.* at 430.

Here, both the Plaintiffs' prior Complaints reference Fournier's Notice of Claim. Plaintiffs maintain that they alleged new facts regarding it that would bar res judicata. The court acknowledges that neither Complaint references the harassment actions that are the basis for the wrongful use of civil proceedings claims. However, Fournier points out that the Plaintiffs were aware of the proceedings and used them as a basis for their prior retaliation claim in their Supplemental Answers to Interrogatories.[6] That makes this case different than *Gonzalez-Pina*. Here, the Plaintiffs are not alleging new conduct that occurred <u>after</u> a prior suit was settled or resolved. Instead, they are alleging conduct that occurred <u>during</u> the prior suit in its early stages. Moreover, the conduct that they are now

---

[6] When asked to "[i]dentify with particularity the factual basis for your allegations that you have been retaliated against by Defendants" the Plaintiffs answered that they "[r]equest[ed], with an implicit threat that was later followed through with – namely that Jessica Fournier would make a claim of harassment against Jane Quirion – that Jane Quirion . . . ." and that the former defendants "[a]ssist[ed] Caroline Thibeault, NT, Rebecca Brooks, DB, and Jessica Fournier with pursuing claims against Jane Quirion for 'harassment.'" The court treats this as a party admission.

18

pursuing a new claim for is conduct that they used to support their prior retaliation claim with. This are not new facts or series of events that "rise to an entirely separate cause of action." *Id.* at 430. Next addressed is whether the claims for wrongful use of civil proceedings should have been in the prior suit, even though the events that the claims are based upon arose shortly after the Plaintiffs filed Complaints 1 and 2.[7]

**D. Should the Wrongful Use of Civil Proceedings Claims Have Been Brought Previously Although they Allegedly Occurred After the Complaints were Filed?**

The Plaintiffs argue that there is no overlap in the Complaints regarding wrongful use of civil proceedings, and therefore they are entirely new claims not barred by res judicata. Fournier maintains that the events giving rise to these claims took place well before judgment was entered in the prior cases and that the Plaintiffs should have amended their Complaints and joined her as a party. She contends that because the harassment proceedings took place in May through June 2014,[8] and the deadline for amending pleadings and joinder of parties was January 2015, that the Plaintiffs had ample time to include their claims against Fournier in the prior suit. Fournier points to *Havercombe* as support for this court to apply res judicata to the current suit, because they used the harassment notices in the prior suit. In *Havercombe*, the court explained that

> [t]he additional incidents during that period could also have been the subject of the testimony and other factual proffers in [the prior suit] as, among other things, proof of the defendant's on-going practice of unlawful discrimination. Such an overlap in evidentiary proffers is, according to the Restatement, another good reason for the second action to be held precluded.

---

[7] Complaint 1 was filed June 2, 2014, and Complaint 2 was filed May 23, 2014.

[8] Despite this assertion, it appears to the court that the first harassment action was commenced on May 30, 2014, and some continued into July 2014 when they were resolved. Police reports were still being made in August. Whether the actions wrapped up in June or August is not of consequence in deciding this Motion.

*Havercombe v. Dep't of Educ. of the Commonwealth*, 250 F.3d 1, 7 (1st Cir. 2001) (internal citations, quotations, and alterations omitted). In this case, the harassment notices and proceedings, victim impact statements, and police reports associated with the Plaintiffs current claim for wrongful use of civil proceedings were filed with the court near the beginning of the prior suit, and some were actually used to support Plaintiffs' claims in that suit. This is a "good reason for the current action to be precluded." *Id.*

The Plaintiffs argue that because the harassment actions occurred after the complaints were filed, they were not required to amend their complaint to include them. They cite to a slip opinion explaining that "[i]n general, claim preclusion does not preclude litigation of events that occur after the date on which the plaintiff filed the prior complaint, assuming the prior claim was not amended to incorporate post-filing events." *Gladu v. Correct Care Sols.*, No. 2:17-cv-00504-JAW, 2018 U.S. Dist. LEXIS 170655, slip op. at *11 (D. Me. Oct. 3, 2018). The following sentence in that opinion, which the Plaintiffs omit, tempers that general statement. The court went on to explain, "[h]owever, claim preclusion prevents litigation in a later action of matters that grew out of the same nucleus of operative facts and should have been brought in the prior action." *Id.* (quotation marks omitted).

In *Gladu*, the first complaint and amended complaint in the first case were filed in September 2015, and December 2016 respectively. *Id.* at 2. The court granted summary judgment in the first case on February 14, 2018, after the plaintiff had already filed another complaint to initiate a second case in December 2017, which alleged events going back to April 2017 that were similar to those in the first complaint. *Id.* at 12-14. In comparing the claims within the two complaints, the court concluded that the plaintiff presented similar evidence on his current claims and sought relief for them in his first case, so "the claims asserted in the current action can fairly be characterized as the same

20

claims he asserted in the prior action, <u>or claims that should have been asserted in the prior action</u>." *Id.* at 14. (emphasis added).

This court has already determined that Plaintiffs' current claims arise from the same common nucleus of operative facts as their prior suit. Here, Plaintiff filed the first two complaints on May 23 and June 2 of 2014. Exhibits show that Fournier initiated a harassment action with the Topsham Police Department on June 12, 2014. Her Emotional Impact Statement that was provided to the police is dated June 5, 2014. Other individuals filed their own requests for harassment actions with the police and West Bath District Court from May 30 through the middle of June. The harassment actions were concluded by June 27, after another parent voluntarily dismissed her court action, and a district court judge granted Quirion judgment as a matter of law after a hearing on Fournier's protection from harassment request. These events are not only referenced in the Plaintiffs' answers to interrogatories as evidence of retaliation, but they are very near in time to when Complaints 1 and 2 in the prior suit were filed. They were known to the Plaintiffs, who apparently believed them to be relevant to their actions. It would have preserved judicial economy if they had amended their complaint to include Fournier as a defendant, as they could have done, and asserted the current claims. Plaintiffs chose not to do so. These are not the type of "subsequent" claims that escape a motion to dismiss based on res judicata. In sum, these claims should have been brought in the prior action and are sufficiently identical to the cause of action in the prior suit.

### iii. Sufficient Identicality Between the Parties in the Two Actions

Privity between the defendants is not necessary for claim preclusion, but res judicata applies "if there is privity or if the new defendant is 'closely related to a defendant from the original action-who was not named in the previous law suit.'" *Silva v. City of New Bedford*, 660 F.3d 76, 80 (1st Cir. 2011) (quoting *Negron-Fuentes v. UPS Supply*

21

*Chain Sols.*, 532 F.3d 1, 10 (1st Cir. 2008) (alterations omitted). As *Negron-Fuentes* explained,

> claim preclusion can sometimes operate in favor of a party--*e.g.*, one in privity with or closely related to a defendant from the original action--who was not named in the previous law suit. For example: where some alleged conspirators are sued in the first (unsuccessful) action and the remainder in a second suit based on the same allegations, or when a government is sued first (unsuccessfully) and officers in their personal capacities sued afterwards on the same theory. . . . [T]his has usually occurred where the claims were or could have been brought against the original defendant in the original suit.

532 F.3d at 9. The First Circuit has noted, and cited, other courts that found a "sufficiently close relationship existed based on employment and agency to support claim preclusion." *Silva*, 660 F.3d at 80.

Fournier argues that because she was referenced numerous times in the prior complaints and because much of the prior suit was about her, she is closely related to the District and to the individual defendants in the prior cases, who were sued in their individual capacities. She points to the notice of claim that Plaintiffs served on her, the very same one which also was served on Smith, a defendant in the prior suit. She maintains that because the notice alleged the same claims against both of them, it shows how closely related she is to the prior defendants, and intertwined with the Plaintiffs' retaliation claims in the prior suit.

The Plaintiffs point to caselaw outside the First Circuit to show that the identicality prong of res judicata is not met when a plaintiff claims an intentional tort against an employee that was not committed within the scope of her employment. They concede, however, that the third prong is generally met when the claims could have been brought against a defendant in the prior suit, and the second suit attempts to hold related defendants liable on related claims.

Here, like in *Silva*, the question is whether the various judgments, stipulations of dismissal, and verdict in the prior suit bar the Plaintiffs' claims against Fournier because they could have, but did not, bring those claims in their prior case. *Id.* at 79. The claims in the present suit generally arise from the same alleged retaliation that the Plaintiffs claimed in the prior suits. There, they sued both the District in its official capacity, and employees of the District in their personal capacity. Now, after having named Fournier in her capacity as a District employee, they changed their tune and their amended complaint to allege that at no time she was acting in her capacity as an employee, or in agency with the District or any of the prior Defendants. This is clear attempt to separate Fournier from the prior defendants so that claim preclusion may not apply. Despite Plaintiffs' new assertions, Fournier is closely related to the prior defendants and the Plaintiffs could have, but did not, bring their claims against her in the prior case. Plaintiffs "made a number of strategic choices; claim preclusion doctrine requires [them] to live with those choices."[9] *Airframe Sys. v. Raytheon Co.*, 601 F.3d 9, 11 (1st Cir. 2010).

In sum, Fournier has met all the elements of res judicata. There was a final judgment on the merits of all of the Plaintiffs' prior claims. There is sufficient identicality between the causes of actions in the prior and current suit as they share a common nucleus of operative facts. Moreover, Fournier could have been, and should have been, included in the prior suit. Finally, as evidenced by the Plaintiffs amending Complaint 3 to allege that Fournier was at no time acting within the scope of her employment or in

---

[9] There, like here, the plaintiffs "made choices to bring piecemeal and sequential litigation, apparently hoping this strategy would maximize its chances of recovery through settlement or trial. This is a case where 'the new party can show good reasons why it should have been joined in the first action and the old party cannot show any good reasons to justify a second chance.'" *Airframe Sys. v. Raytheon Co.*, 601 F.3d 9, 18 (1st Cir. 2010) (quoting 18A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4464.1, at 727 (2d ed. 2002)).

agency with any of the prior defendants, Fournier is closely related to the prior defendants for the sufficient identicality prong of res judicata to apply. Plaintiffs' claims against Fournier are barred by claim preclusion. Below are discussions of judicial estoppel and acquiescence to claim splitting, which the Plaintiffs mount as defenses to res judicata. After an analysis of both, the court finds that neither applies to this case.

## IV. Does Judicial Estoppel Prevent Fournier from Asserting Res Judicata?

"[T]he doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant . . . in a prior legal proceeding." *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003). The purposes behind the doctrine are to "ensure that parties proceed in a fair and aboveboard manner, without making improper use of the court system." *Id.* It is most often invoked when the court believes that a party is "playing fast and loose" with it, but not otherwise. *Id.* Judicial estoppel depends on the facts of each case and does not require a mechanical test to determine whether it applies. *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004).

Two conditions must be satisfied for judicial estoppel to apply, and courts are within their discretion to consider a third factor if they desire. *Id.* These are:

> First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position. [T]hird . . .: absent an estoppel, would the party asserting the inconsistent position derive an unfair advantage?

*Id.* Therefore, judicial estoppel applies when "a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage." *InterGen*, 344 F.3d at 144.

Plaintiffs contend that Fournier is judicially estopped from asserting a res judicata defense because in her deposition in the prior suit, her attorney instructed her not to answer questions about the Notice of Claim that she served on the Plaintiffs, and argued

24

that it was not relevant to the case. She argued that she was only a witness, not a party. The Plaintiffs maintained that the Notice was "very closely related to all of the events surrounding [their] claims." Ultimately, a magistrate judge was called and agreed with Fournier's position that she was not a named party and her motivation in serving the notice was not relevant to the Plaintiffs' claims. The Plaintiffs maintain that this is directly contradictory with Fournier's current claim that the Notice was an operative fact in the first suit, and that she is closely related to the prior defendants so that res judicata applies.

Fournier argues that because she was not a named defendant to the prior action, that alone bars judicial estoppel as it only applies to litigants or parties in prior cases. She maintains that she never alleged exact identicality of the claims and parties in the prior suit and the current case against her, but instead that they are "sufficiently" identical for res judicata to apply.

Plaintiffs state that Fournier objected to questions about the Notice "after she explained why she had served the notice" and argued that questions regarding the Notice were irrelevant because the potential lawsuit in the Notice was not related to why Fournier was being deposed. This could be seen as Fournier previously stating that the Notice was irrelevant to the Plaintiffs' retaliation claims, and therefore asserting an inconsistent position then compared to now. However, because the Plaintiffs concede that she "explained why she served the notice," it is better viewed as Fournier not discussing the Notice as it related to her potential personal tort claims against the Plaintiffs. Therefore, her position then and now are not directly contradictory.

Even if the Plaintiffs could show the elements of judicial estoppel, the doctrine would not apply in the instant case because Fournier was not a defendant in the prior suit. Some federal courts have determined that judicial estoppel cannot apply to a person that was not a party in the prior proceeding where the statement was made. *Encyclopaedia*

25

*Britannica, Inc. v. Dickstein Shapiro, LLP*, 905 F. Supp. 2d 150, 155 (D.D.C. 2012). The *Encyclopaedia Britannica* court reasoned that because the Supreme Court, its parent circuit court, and treatises all framed the judicial estoppel test in forms of <u>parties</u>, it is required that a person actually be a litigant for the doctrine to apply to her.[10] *Id.* Therefore, "the logic of judicial estoppel—that a party should not be changing its position between proceedings—does not apply to statements made before one was a party at all." *Id.* Fournier was not a party to the prior suit as the Plaintiffs did not name her although their claims centered around her. Therefore, the doctrine of judicial estoppel does not bar Fournier from asserting a res judicata defense.

## V. Did Fournier Acquiesce to the Splitting of the Causes of Action Such that She Cannot Now Assert a Res Judicata Defense?

The general rule against claim splitting is subject to an exception "that if the parties agree, or a defendant implicitly assents, to a plaintiff splitting his claim, then a judgment in an earlier action which normally would bar the subsequent action will not." *Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.*, 805 F.2d 1085, 1087 (1st Cir. 1986). The rationale behind this exception is that a purpose of res judicata "is to protect a defendant from the harassment of multiple actions." *Id.* Therefore, a "defendant who fails timely to complain waives the benefit" and acquiesces to the claim splitting. *Id.*

The court need not delve into the arguments of the parties. As previously stated, Fournier was not a party to the prior suit. It is illogical that a nonparty could acquiesce to

---

[10] A party is "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interests in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; LITIGANT < a party to the lawsuit>." Party, Black's Law Dictionary, 1297 (10th ed. 2014). Fournier was not a party or a litigant to the prior suit even though the Plaintiffs could have chosen to name her as a defendant.

26

claim splitting if no claim was brought against her to be split. Therefore, because Fournier was not a party to the prior suit, she could not have acquiesced to claim splitting.

Again, because Fournier has met the elements of res judicata, and the Plaintiffs have not shown that she is judicially estopped from asserting it as a defense, or that she acquiesced to the splitting of the causes of action, the court grants Fournier's Second Motion to Dismiss in its entirety. However, the court will address below the parties' arguments regarding whether the statute of limitations additionally bars the Plaintiffs' claims, and whether some of the claims should be dismissed on the merits.

## VI.    Fournier's Second Motion to Dismiss Based on the Statute of Limitations

Fournier argues that the Maine Tort Claims Act (MTCA) bars the Plaintiffs' wrongful use of civil proceedings and abuse of process claims against her. The MTCA requires that, within 180 days after a claim or cause of action arises, a claimant shall file a written notice containing specific requirements, including the "name and address of any governmental employee involved." 14 M.R.S. § 8107(1)(C). An action may not be brought if the notice provisions are not substantially complied with. § 8107(4). Section 8110 provides that "[e]very claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues . . . ."

Fournier argues that because the Plaintiffs have not served written notice upon the District that complies with the 180-day timeframe prescribed by § 8107, or the two-year timeframe allowed by § 8110, the abuse of process and wrongful use of proceedings claims must be dismissed. They further argue that the MTCA applies to claims against government employees in their individual capacity.

In response, the Plaintiffs maintain that Fournier's statute of limitations argument fails because they do not allege that she was acting in the course and scope of her

27

employment, or on behalf of the District when she engaged in the conduct on which their claims are based. They argue that because Fournier's actions against them were not taken in her role as an employee, or a person "acting on behalf of a governmental entity[,]" § 8102(1), that neither the notice requirement nor the two-year limitations period applies to them.

Because Complaint 3 refers to Fournier as acting within the course of employment, the MTCA clearly applies. The Plaintiffs' claims for wrongful use of civil proceedings and abuse of process are dismissed as barred by the MTCA for failing to comply with the notice requirement and as occurring outside the two-year limitations period. The Law Court has not had much occasion to determine when an amended complaint entirely supersedes an initial complaint. Because of that, this court applies the same reasoning as laid out in Section II of this Judgment, and considers the factual allegations of Complaint 3 in deciding the Second Motion to Dismiss based upon the statute of limitations and the merits of the claims. Because Complaint 3 refers to Fournier as acting within the course of employment, the MTCA clearly applies. The Plaintiffs' claims for wrongful use of civil proceedings and abuse of process are dismissed as barred by the MTCA for failing to comply with the notice requirement in the statute.

### VII. Fournier's Second Motion to Dismiss as it Addresses the Merits of the Plaintiffs' Claims

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the allegations in the complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (internal citations omitted). The court shall "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123, 127. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause

28

of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* Fournier maintains that the Plaintiffs do not state a claim for which relief can be granted for any of the counts in Amended Complaint 3.

### i.    Abuse of Process

A plaintiff maintains a claim for abuse of process if he can show "(1) the use of process in a manner improper in the regular conduct of the proceeding, and (2) the existence of an ulterior motive." *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 23, 901 A.2d 189 (quoting *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 7, 708 A.2d 283) (internal citation marks omitted). Filing a lawsuit is a regular use of process and does not amount to abuse of process, regardless of the plaintiff's motive. *Advanced Constr. Corp.*, 2006 ME 84, ¶ 23, 901 A.2d 189. "[A]buse of process claims arise when litigants misuse individual legal procedures, such as discovery, subpoenas, and attachment, after a lawsuit has been filed." *Id.* However, an abuse of process claim can arise when a plaintiff misuses the procedures for obtaining a lien if material misstatements of facts are contained in the lien statement. *Id.*

Fournier maintains that the Plaintiffs fail to state a claim for abuse of process because a pre-suit notice of claim cannot give rise to an abuse of process claim as no lawsuit had already been filed, or, at best, it was a regular use of proceedings and therefore cannot amount to an abuse of process. The Plaintiffs argue that an abuse of process claim can arise before a lawsuit is filed, and that because they alleged that Fournier never intended to sue them, they have sufficiently stated a claim upon which relief may be granted.

In *Jennings v. Maclean*, a defendant attorney who had obtained a money judgment against a plaintiff sent a letter and copy of the money judgment to an attorney "handling an unrelated real estate closing in a successful attempt to have [the plaintiff's] share of the proceeds withheld." 2015 ME 42, ¶ 1, 114 A.3d 667. The letter explained that the funds payable to the plaintiff needed to be placed in escrow "pending a further turnover by the court" that the defendant attorney would seek. *Id.* ¶ 3. The plaintiff filed suit in Superior Court alleging that the letter amounted to abuse of process. *Id.* ¶ 4. The Superior Court (Knox County, *Horton, J.*) granted the defendant attorney summary judgment. No material facts were in dispute, so the central question for the Law Court on appeal was whether the plaintiff presented a prima facie case of abuse of process.

The Court explained that the defendant attorney "did not employ any process, and did nothing improper, when he sent the letter to [the real estate attorney]. We have cited as examples of the improper use of process for purposes of this tort the 'misuse of individual legal procedures, such as discovery, subpoenas, and attachment, after a lawsuit has been filed, and the misuse of the procedures for obtaining a lien." *Id.* ¶ 7 (internal quotations and alterations omitted). The Court clarified that the letter

> did not involve any "process" because it was not a legal procedure, even though it suggested that a second turnover order—a procedure entirely proper in the regular course of attempting to collect on a judgment—would be sought from the court. Unlike a true instrument of legal process, the letter did not purport to compel [the real estate lawyer] to perform any legal obligation, and he was free to ignore it if he thought that [the defendant attorney] was wrong concerning his professional responsibilities.

*Id.* ¶ 8.

Here, accepting the facts in the Complaint as true, the plaintiffs have sufficiently alleged Fournier's ulterior motive. Therefore, the crux of the issue is whether Fournier's Notice can amount to abuse of process. Contrary to Fournier's contention, an action that occurs pre-suit, such as obtaining a lien via a lien statement that contains gross

30

misstatements of material fact, can amount to abuse of process. However, Fournier's Notice is more akin to the letter at issue in *Jennings*. Although a notice of claim is sent pursuant to 14 M.R.S. § 1602-B(5),[11] it is a "regular use of process." It is not a "true instrument of legal process" as it did not purport to compel the Plaintiffs to perform any legal obligation.

Because Fournier's Notice is a regular use of process, it cannot form the basis of an abuse of process claim. Therefore, the Plaintiffs have failed to state a claim upon which relief may be granted, and this court dismisses the abuse of process claim on the merits.

ii.    **Violation of the Maine Civil Rights Act**

The Maine Civil Rights Act (MCRA) prohibits any person from intentionally interfering "by physical force . . . or by the threat of physical force against a person" with that person's exercise of their rights under the Constitution or other laws. 5 M.R.S. § 4682.

The Plaintiffs base their claim on the harassment notices that were served upon Quirion threatening her with arrest if she had contact with anyone listed in the notices. The possibility of arrest is the threat of physical force that the Plaintiffs allege under the MCRA, which they argue is enough to state a claim under the MCRA.

Fournier maintains that the possibility of arrest contained within the harassment notices should not be enough to state a claim upon which relief may granted. She argues that the MCRA is Maine's hate crime statute, is limited in scope, and is intended to apply to "hate groups." She contends that to allow the Plaintiffs' claim to go forward on this alleged threat of force "would mean that any victim who filed a protection from

---

[11] "Prejudgment interest accrues from the time of notice of claim setting forth under oath the cause of action, served personally or by registered or certified mail upon the defendant until the date on which an order of judgment is entered."

harassment or abuse notice or claim could be vulnerable to a retribution lawsuit under Maine's hate crime statute" which would chill those in need from seeking them.

To date, the Law Court has not addressed the MCRA and the "threat of force" element it contains in any meaningful way. Often, violations of the MCRA are brought by people who were involuntarily committed to a psychiatric hospitals. *See Doe v. Graham*, 2009 ME 88, 977 A.2d 391; *Saunders v. Tisher*, 2006 ME 94, 902 A.2d 830. In *Graham*, the plaintiff failed to state a claim upon which relief could be granted, even though she alleged that she understood a Spring Harbor doctor telling her that the doctor had no control over the security guards' actions, to be threats of force. 2009 ME 88, ¶ 4, 977 A.2d 391. But, the Law Court did not rest its decision on that aspect of the MHRA, and instead analyzed the case to determine whether the plaintiff was deprived of her liberty under the federal and Maine Constitutions. *Id.* ¶ 22. Ultimately, after her two-hour detention, and given the many procedural safeguards in the involuntary commitment process, it determined that she did not state a claim of *"deprivation"* under the either the State or federal standard and dismissal of her civil rights claims was warranted. *Id.* ¶ 26.

In *Saunders*, a doctor signed an involuntary commitment application and the plaintiff was involuntarily held for twenty-one days after being arrested and forcibly transported to a hospital. 2006 ME 94, ¶¶ 3-4, 902 A.2d 830. There, the majority did not address whether the arrest was sufficient force under the MCRA, as the Court determined that the plaintiff's claims were barred by the three-year statute of limitations in the Maine Health Security Act. *Id.* ¶ 16. In dissent, Justice Alexander quoted the MCRA in relevant part, referred to the plaintiff's arrest and subsequent involuntary commitment, and opined that the record did not preclude his MCRA claim "beyond a doubt." *Id.* ¶¶ 24-26.

Here, the threat of force is the print contained in the harassment notices. It is, as Fournier argues, attenuated from her as she did not make the "threat" directly, because

32

it was issued through a notice to Quirion after Fournier was granted a temporary protection from harassment order. It is clear to the court that the case at bar, and the "threat of force" it contains, is not the type that the MCRA was intended to address.[12]

The threat of arrest contained within the harassment notices served upon Quirion does not amount to a threat of force sufficient to state a claim upon which relief may be granted under the MCRA.

## CONCLUSION

The Defendant's Second Motion to Dismiss is granted in its entirety based on res judicata. The Motion is also granted regarding Counts I, II, and III as barred by the statute of limitations. Finally, the Motion is also granted for Counts I and IV as the Plaintiffs fail to state a claim upon which relief may be granted.

The Clerk is directed to incorporate this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Dated: June 11, 2019

Daniel I. Billings
Justice, Maine Superior Court

---

[12] *See Connolly v. Henrietta D. Goodall Hospital* where a nurse who offended hospital officials was placed on a one-day suspension without pay, and the suspension was reported to the Board of Nursing. 2006 Me. Super Lexis 3, at *1 (Jan. 6, 2006). In dismissing her MCRA claims, the Superior Court (York County, *Fritzsche, J.*) wrote that "[n]o hospital official hit her, shot her, lynched her, burnt her house, trespassed upon her property or otherwise violated this law. The [MCRA] was not designed to encompass all potential interferences with civil rights. The precise words chosen by the Legislature cannot be cast aside. The law focuses on force, violence, damage or destruction of property or trespass, none of which exist here." *Id.* at *7.

33